[No. 38861.    Department Two.    September 7, 1967.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT D.
ZORICH, *Appellant.**

*Koenigsberg, Brown & Sinsheimer,* by *L. M. Koenigsberg,*
for appellant.

*Charles O. Carroll, Larry L. Barokas,* and *Stephen R.
Schaefer,* for respondent.

BARNETT, J.†—The defendant was charged by an infor-
mation with the crime of grand larceny committed by color

*Reported in 431 P.2d 584.

---

†Judge Barnett is serving as a judge pro tempore of the Supreme
Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

and aid of fraudulent or false representations. The trial resulted in a verdict of guilty as charged. The defendant received a suspended sentence and a $1,000 fine. The defendant appeals from the judgment of conviction.

A brief summary of the facts most favorable to the state is as follows: The defendant is a plumbing contractor. Standard Discount Corporation, the purported victim and complainant, is a sales finance company located in Seattle. Its normal business activity is the purchase of conditional sales contracts.

On January 4, 1965, at the office of Standard Discount, the defendant informed the president of Standard Discount, Mr. Kleinberg, that he desired to sell to the company $50,000 worth of accounts receivable purportedly due him. The defendant gave Standard Discount certain documents indicating jobs he had worked on and the amounts to be realized from such jobs, and representations were made by the defendant that these accounts owed him money. Mr. Harmon, the manager of Standard Discount, sent registered letters to each purported obligor in which there was a request that the obligation be confirmed and also a notification that the accounts were in the hands of Standard Discount. All of the registered mail receipts were signed and returned, but none of the obligors made replies to the inquiries requesting confirmation of the obligations.

Mr. Harmon testified that he talked to people by telephone who represented themselves as obligors, and that as a result of the conversation he gained the impression the accounts receivable did exist and were payable to the defendant. He also testified that he got credit reports on each of the obligors and that the good information concerning the obligors overbalanced the bad.

Mr. Kleinberg testified in substance that after the accounts were investigated it was discovered that a number of them were slow and one was very bad; but that they thought they were perfectly safe with $60,000 in security if the sale was for $30,000 instead of the $50,000 requested by the defendant.

On January 9, 1965, an agreement was executed between defendant and Standard Discount entitled "Guarantee Agreement" which stated in essence that the purchaser had paid $30,000 for the accounts receivable; that the defendant guaranteed the sums specified as due; that there were no counterclaims or offsets by any of said obligors on the accounts; and that the seller agreed that all sums specified would become due and owing within 90 days. The agreement further specified that Standard Discount was to realize the total sum of $32,000 on these accounts and turn all excess amounts back to the defendant. Coupled with the guarantee agreement was an instrument entitled "Assignment of Accounts Receivable." This was also executed and delivered by the defendant to Standard Discount. This instrument assigns to Standard Discount eight accounts totaling an aggregate of $69,947.16. In this instrument there is a warranty that "any and all work to be done in consideration of said Accounts Receivable has been completed all to the satisfaction of said obligors above named; that all sums specified as owing are true and accurate, and are due and owing as of January 8, 1965; . . . ." On the same date as the other instruments alluded to were delivered, the defendant executed and delivered to Standard Discount a promissory note in the sum of $32,000, payable within 60 days.

When the accounts were not paid, Standard Discount contacted the obligors and all of them denied owing any of the moneys listed in the assignment agreement. Standard Discount attempted to locate the defendant, but was unsuccessful at that time. Eventually Mr. Kleinberg and his attorney met with the defendant at defendant's office. Defendant's attorney was present. The defendant was interrogated with reference to the accounts, but upon the advice of his attorney he refused to give any information.

The defendant does not argue in this court that the representations were not made; neither does he contend that they were not false. He challenges the sufficiency of the evidence to support a conviction. The main thrust of

defendant's contention is that there is no substantial evidence that Standard Discount relied upon the defendant's false representations.

In our consideration of this contention, we are guided by the decisions of this court that the jury is the sole and exclusive judge of the evidence and the weight and credibility of the witnesses, and that this court will not reverse if there is substantial evidence to support the jury's findings. *State v. Mickens,* 61 Wn.2d 83, 377 P.2d 240 (1962). In addition, a challenge to the sufficiency of the evidence requires that the evidence be interpreted most strongly against the moving party and in the light most favorable to the opposing party, and whether the evidence is sufficient to submit the issue to the jury is a question of law for the court and no element of discretion is involved. We now note the substantive law with reference to false representation in a criminal case pertinent to the issue raised in this appeal. It is not sufficient for there to be merely a false representation, but the victim must have relied upon it. However, the false representation need not be the sole means of inducing the defrauded person to part with his money, but it is sufficient if such representation was believed and relied upon by such person and in some measure operated to induce him to part with his property. *State v. Cooke,* 59 Wn.2d 804, 371 P.2d 39 (1962); *State v. Peterson,* 190 Wash. 668, 70 P.2d 306 (1937). Furthermore, to maintain such a charge it is not essential that the state prove the victim had a "right to rely" upon the false representation. It is only necessary that the victim actually relied upon it. *State v. Cooke, supra.*

In *State v. Cooke, supra* at 807-08, we quoted with approval from *State v. Knowlton,* 11 Wash. 512, 39 Pac. 966 (1895) as to the distinction between criminal law and civil law with regard to showing fraud.

"Counsel contends that a pretense, though false and made for the purpose of defrauding, which would not have misled the person to whom made, had he exercised 'ordinary prudence and caution,' is not sufficient, and

cites many authorities in support of the proposition. We think, however, that the better rule permits the jury to consider, from the facts and circumstances of a given case, what was the effect of the false representations upon the mind of the person defrauded, and what was the result. Did he rely upon the false pretenses and was he defrauded thereby?

" 'Whether the prosecutor "had the means of detection at hand," or whether "the pretenses were of such a character as to impose upon him," are questions of fact, to be left to the jury, as they must necessarily vary with the particular case. . . . The statute assumes some defect in caution, for if there were perfect caution no false pretenses could take effect.' Wharton, Crim. Law, (9th ed.) § 1188.

"The pretense 'need not be such an artificial device as will impose on a man of ordinary caution, . . . and need not be calculated to deceive a person of ordinary prudence and caution. . . . It is impossible to estimate a false pretense otherwise than by its effect. . . . A court cannot, with due regard to the facts of human life direct a jury to weigh a pretense, an argument, an inducement to action, *in any other scale than that of its effect.*' 2 Bish. Crim. Law (8th ed.) §§ 434, 436.

" 'If the false pretenses were made with the design of deceiving, and thereby obtaining credit or property, and had that effect, the guilty party cannot escape on the ground of the weak credulity of his victim.' *State v. Fooks,* 65 Iowa, 196 (21 N.W. 561)."

With these principles in mind as guidelines we now turn to defendant's argument that the evidence is insufficient to base a finding that Standard Discount relied upon the false representations. We have heretofore stated that the transaction involved three instruments, *viz.,* an assignment of accounts receivable, a guarantee agreement and a promissory note, all of which were executed and delivered on January 9, 1965. The court held the transaction constituted a loan. This determination, asserts the defendant, "effectively voided the psuedo-sale of accounts receivable." The defendant argues that Standard Discount relied upon the representations with reference to a sale of the accounts receiva-

ble; hence there is no basis for this action. He states on page 9 of his brief:

> The defendant borrowed the money. He gave his promissory note. The document which is the foundation of his conviction was not connected with the loan, in any manner, by its terms. It was a sale of accounts receivable. . . . [T]he so-called "sale" was in effect a subterfuge to escape the usury statute. Followed to any logical conclusion, the defendant must answer on his loan, and not the sale. The sale was a nullity. The lender accepted the liability of the borrower; hence he could not rely on a nullity, the purchase of the accounts receivable. Reliance was a necessary ingredient of the crime charged.

We do not agree with this reasoning. The court held that the whole transaction consummated on January 9, 1965, constituted a loan. The guaranty agreement provides

> That upon the receipt of full payment of $32,000.00 and any and all costs . . . provided for in the Assignment of Accounts Receivable, purchaser will reconvey any and all of said Accounts Receivable remaining to guarantors.

We agree with the trial court that the transaction consummated on January 9, 1965, was a loan and that the accounts receivable were assigned as security. Mr. Kleinberg testified with reference to the note:

> Q. What was the purpose of this note, . . . .? A. Well, the note was not worth very much because Mr. Zorich's credit was very bad, but we took it just as additional security. In other words, we wanted to get all the security we could, . . . . Q. Upon what security were you relying upon, Mr. Kleinberg, when you made this original contract back on the 9th? A. Entirely upon the accounts receivable. . . . Q. And you knew those accounts were incorrect, too? A. Certainly we didn't or we wouldn't have bought them.

The court properly instructed the jury that usury is not a defense to this action. It instructed the jury in substance that a usurious contract is not void, but that, in an action on such a contract, the lender could only recover the principal less the amount of interest accruing thereon and, if interest shall have been paid, the judgment shall be for the

principal less twice the amount of interest paid. In the determination of whether or not Standard Discount relied upon the guaranty and the assignment or transfer of the accounts receivable, the jury was further instructed that it could take into account all the surrounding circumstances including but not confined to the usury in the note.

These instructions, which were very favorable to the defendant, enabled the jury, in weighing the evidence, to determine whether or not an illegal profit or, on the other hand, the false representations induced Standard Discount to part with its money. Reasonable minds could draw different conclusions from the evidence, hence this question became one for the jury to resolve.

█ Investigations on the part of a victim are facts relevant to the issue of reliance in a criminal case of larceny by false representations. Reliance is a factual question for the determination of the jury. In the present case, Standard Discount's investigations were not conclusive on the issue of reliance, but were facts for the jury to weigh in determining such issue. See *State v. Knowlton,* 11 Wash. 512, 39 Pac. 966 (1895).

We conclude from a careful perusal of the record that the evidence in this case, if believed by the jury, sustains a finding that Standard Discount relied entirely upon the false representations made by the defendant.

There is no merit to defendant's other assignment of error.

Judgment is affirmed.

FINLEY, C. J., HILL, HUNTER, and NEILL, JJ., concur.