253 P.3d 437 (2011)
161 Wash.App. 395
STATE of Washington, Respondent,
v.
Lisa Renee KNUTZ, Appellant.
No. 39925-3-II.
Court of Appeals of Washington, Division 2.
April 20, 2011.
*438 Manek R. Mistry, Jodi R. Backlund, Backlund & Mistry, Olympia, WA, for Appellant.
Sara I. Beigh, Lewis County Prosecutor's Office, Chehalis, WA, for Respondent.
HUNT, J.
¶ 1 Lisa Renee Knutz appeals her jury conviction and exceptional sentence for first degree theft with aggravating factors. She argues that the trial court erred in failing to instruct the jury more specifically on the "reliance" element of first degree theft, failing to give a Petrich[1] unanimity instruction, and imposing a clearly excessive sentence. We affirm.

*439 FACTS

I. Theft by Fraud from Senior Citizen
¶ 2 Robert J. Von Gruenigen is a retired music professor from Ohio State University. In 2005, at age 75, Von Gruenigen moved to an "assisted living home" in Seattle. I Verbatim Report of Proceedings (VRP) at 75. Soon thereafter he met Lisa Renee Knutz. On December 8, 2005, he loaned Knutz $470 in cash, the first of many such cash loans,[2] which totaled approximately $347,000 between December 8, 2005, and April 2, 2008.
¶ 3 According to Von Gruenigen, Knutz requested these cash loans for a variety of reasons: "traffic fine," I VRP at 82; "to open a bank account," I VRP at 83; "gas," I VRP at 85; "welfare penalty," VRP at 94; replacement of a previous cash loan from Von Gruenigen that was missing or stolen; medical bills; and bail. Between October 1, 2007, and March 7, 2008, Von Gruenigen provided Knutz with 43 cash loans, all but one of which exceeded $2,000:[3] For example, one loan was for $20,000. Another large loan was for $11,500, "to reimburse [Knutz's] landlord so that [Knutz] wouldn't be in legal trouble" because of "vandalism."I VRP at 106. On March 17 and 18, 2008, Von Gruenigen provided Knutz with $13,700 and $10,000, respectively, when Knutz told Von Gruenigen that she had cancer and needed an operation.
¶ 4 "Only once in a while" did Von Gruenigen ask Knutz for documented proof of her alleged purchases or bills. I VRP at 87. He asked questions about her purchases only "sometimes." I VRP at 88. According to Von Gruenigen, despite some suspicions, he did not ask more questions or demand more proof because, "I guess I believed her." I VRP at 89.
¶ 5 Although Von Gruenigen eventually stopped believing that Knutz would repay him, he continued to provide her cash out of fear that, if he stopped, she would go to prison, and would then be unable to take care of her siblings, whose parents, Knutz had said, were incarcerated. Von Gruenigen also believed that Knutz had given birth to triplets, one of which had died, one of which Knutz had relinquished for adoption, and one that Knutz kept and cared for. Knutz did repay some of the loans by performing tasks for Von Gruenigen such as hanging pictures, and driving him around in her car. The last cash transfer from Von Gruenigen to Knutz occurred on April, 2, 2008. He stopped giving Knutz money in April 2008 after a person at his assisted living home told him that Knutz might be taking advantage of him.
¶ 6 On April 9, 2008, Centralia Police Department Detective Patrick F. Beall received a report from Adult Protective Services that Von Gruenigen had provided Knutz with $50,000 for the costs of surgery. Centralia Police Department Detectives Beall and Buster[4] arrived at Knutz's residence while she was exiting her vehicle in the driveway. Knutz invited the detectives into her home. After Beall asked about her surgery, Knutz started crying and admitted to having lied to Von Gruenigen about the surgery in order to obtain money. She told Beall and Buster she had given some of the money to her father, a methamphetamine addict, and to her boyfriend, also a drug addict with a "gambling problem." I VRP at 217. She admitted to Beall that she had lied to Von Gruenigen to obtain money from him.

II. Procedure
¶ 7 The State charged Knutz with first degree theft under RCW 9A.56.030(1)(a) and RCW 9A.56.02(1)(b), alleging the following aggravating factors:
[A]t the time of the commission of said offense, the defendant knew or should have known that the victim of the current offense was particularly vulnerable or incapable o[f] resistance, thus adding to defendant's offender score pursuant to [former] RCW 9.94A.525(3)(b) [2009].
. . .

*440 [T]he commission of said offense was a major economic offense or series of offenses in that the offense involved multiple victims or multiple incidents per victim, thus adding to defendant's offender score pursuant to [former] 9.94A.535(3)(d)(i) [2009].
. . .
[T]he commission of said offense was a major economic offense or series of offenses in that the offense involved attempted or actual monetary loss substantially greater than typical for the offense, thus adding to defendant's offender score pursuant to [former] RCW 9.94A.535(3)(d)(ii) [2009].
CP at 28-29.
¶ 8 The "to convict" instruction provided:
To convict the defendant of the crime of theft in the first degree, each of the following four elements of the crime must be proved beyond a reasonable doubt:
(1) That on or about and between January 1, 2005 and March 30, 2008 the defendant by color or aid of deception, obtained control over property or services of another, to wit: money belonging to Robert J. Von Gruenigen, or the value thereof; and
(2) That the property exceeded $1500 in value;
(3) That the defendant intended to deprive the other person of the property;
and
(4) That this act occurred in the State of Washington.
If you find from the evidence that elements (1), (2), (3), and (4), have been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of the elements (1), (2), (3) or (4), then it will be your duty to return a verdict of not guilty.
CP at 37 (jury instruction 4) (emphasis added).
¶ 9 The trial court also instructed the jury on the definition of "[t]heft" "by color or aid of deception," CP at 38 (jury instruction 5); CP at 39 (jury instruction 6), which the trial court defined as follows:
[D]eception occurs when an actor knowingly creates or confirms another's false impression that the actor knows to be false, or fails to correct another's impression that the actor previously has created or confirmed, or prevents another from acquiring information material to the disposition of the property involved, or promises performance that the actor does not intend to perform or knows will not be performed.
CP at 40 (jury instruction 7). Knutz did not ask the trial court to instruct the jury that it must be unanimous as to the method she used to deceive or to obtain the money from Von Gruenigen. Nor did she take exception to the trial court's jury instructions.
¶ 10 The jury found Knutz guilty of first degree theft, also finding all three aggravating factors. Based on Knutz's offender score[5] and the seriousness level of her conviction, the standard range for her sentence was only two to six months of confinement; the statutory maximum, in contrast, was ten years. Based on the jury's finding of aggravating factors (vulnerable victim, major economic offense involving multiple victims or incidents, major economic offense involving an atypically large monetary loss), the trial court imposed an exceptional sentence of five years, and ordered Knutz to pay Von Gruenigen $340,000 restitution. In so doing, the trial court noted that Knutz's theft was "210 times the minimum of Theft in the First Degree" and it "c[ouldn't] think of [a] case that would be more appropriate to give an exceptional sentence than this one." II VRP at 328.
¶ 11 Knutz appeals.

ANALYSIS

I. Jury Instructions
¶ 12 Knutz argues that the trial court made several reversible errors in instructing the jury. We address each in turn.

*441 A. Standard of Review
¶ 13 We review a challenge to a jury instruction de novo, evaluating the jury instruction "in the context of the instructions as a whole." State v. Benn, 120 Wash.2d 631, 654-55, 845 P.2d 289 (1993). "`Jury instructions are sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law.'" State v. Aguirre, 168 Wash.2d 350, 363-64, 229 P.3d 669 (2010) (internal quotation marks omitted) (quoting Keller v. City of Spokane, 146 Wash.2d 237, 249, 44 P.3d 845 (2002)) (emphasis omitted). "Jury instructions are sufficient if they are readily understood and are not misleading to the ordinary mind." State v. Sublett, 156 Wash. App. 160, 183, 231 P.3d 231 (2010) (citing State v. Dana, 73 Wash.2d 533, 537, 439 P.2d 403 (1968)), review granted, 170 Wash.2d 1016, 245 P.3d 775 (2010). "Even if an instruction may be misleading, it will not be reversed unless prejudice is shown by the complaining party." Aguirre, 168 Wash.2d at 364, 229 P.3d 669 (citing Keller, 146 Wash.2d at 249, 44 P.3d 845).
¶ 14 We review a challenge to a trial court's refusal to give a jury instruction for abuse of discretion. Stiley v. Block, 130 Wash.2d 486, 498, 925 P.2d 194 (1996); State v. Winings, 126 Wash.App. 75, 86, 107 P.3d 141 (2005). A defendant is entitled to have his theory of the case submitted to the jury under appropriate instructions when substantial evidence in the record supports that theory. State v. Harvill, 169 Wash.2d 254, 259, 234 P.3d 1166 (2010).

B. "Reliance" Element
¶ 15 Knutz first argues that the "to convict" and related instructions relieved the State of its burden to prove the "reliance" element of first degree theft "[b]y color or aid of deception." Br. of Appellant at 9. We disagree.
¶ 16 The trial court instructed the jury that (1) to convict Knutz of first degree theft, the State had to prove beyond a reasonable doubt "[t]hat on or about and between January 1, 2005 and March 30, 2008 the defendant by color or aid of deception, obtained control over . . . money belonging to Robert J. Von Gruenigen," CP at 37 (jury instruction 4); (2) "[t]heft means by color or aid of deception, to obtain control over the property or services of another, or the value thereof with intent to deprive that person of such property or services," CP at 38 (jury instruction 5) (emphasis added); and (3) "by color or aid of deception means that the deception operated to bring about the obtaining of the property or services. It is not necessary that [the] deception be the sole means of obtaining the property or services." CP at 39 (jury instruction 6) (emphasis added).
¶ 17 Knutz argues that "reliance" is an essential element of first degree theft, relying principally on two cases. In State v. Casey, 81 Wash.App. 524, 915 P.2d 587 (1996), review denied, 130 Wash.2d 1009, 928 P.2d 412 (1996), Division One of our court held that "reliance" is an essential element of first degree theft by color or aid of deception and defined "reliance" as "deception" that "in some measure operated as inducement."[6]Casey, 81 Wash.App. at 527-529, 915 P.2d 587 (emphasis added) (citing State v. Zorich, 72 Wash.2d 31, 34, 431 P.2d 584 (1967)). Again citing Zorich, Casey further noted that "the deception need not be the sole means of inducing the victim to part with his or her property." Casey, 81 Wash.App. at 529, 915 P.2d 587 (emphasis added) (citing Zorich, 72 Wash.2d at 34, 431 P.2d 584). We find Knutz's reliance on Casey to argue that the trial court's jury instructions relieved the State of its burden unpersuasive.
¶ 18 The trial court's instructions here expressly informed the jury that the element "[b]y color or aid of deception means that the deception operated to bring about the obtaining of the property or services. It is not necessary that [the] deception be the sole means of obtaining the property or services." CP at 39 (jury instruction 6) (emphasis added). This jury instruction tracks almost *442 identically the approved language from Casey, which under Casey's definition of "reliance," the trial court's jury instruction clearly included as an element.
¶ 19 Knutz further argues that Zorich defines this "reliance" element as requiring the State to prove that the defrauded person "believed[[7]] and relied upon" the deception. Br. of Appellant at 9 (quoting Zorich, 72 Wash.2d at 37, 431 P.2d 584). The full passage from Zorich to which Knutz refers states:
It is not sufficient for there to be merely a false representation, but the victim must have relied upon it. However, the false representation need not be the sole means of inducing the defrauded person to part with his money, but it is sufficient if such representation was believed and relied upon by such person and in some measure operated to induce him to part with his property.

Zorich, 72 Wash.2d at 34, 431 P.2d 584 (emphasis added) (citations omitted). We find Knutz's reliance on Zorich similarly unpersuasive because the trial court's jury instructions here similarly included Zorich's definition of "reliance."
¶ 20 Here, the trial court instructed the jury that "[d]eception occurs [among other things] when an actor knowingly creates or confirms another's false impression that the actor knows to be false, or fails to correct another's impression that the actor previously has created or confirmed." CP at 40 (jury instruction 7) (emphasis added). The trial court's jury instruction on deception thus encompasses Zorich's definition of "reliance"that the defrauded person must take a false statement as true or at least have confidence that a false statement is true. The definition of "reliance" from Zorich and Casey requires that the victim must "believe" and "rely" on the false representation and that this false representation must be one of things that leads the victim to part with his money. Zorich, 72 Wash.2d at 34, 431 P.2d 584; Casey, 81 Wash.App. at 527-29, 915 P.2d 587. Here, in order to convict Knutz, jury instructions 6 and 7 required the jury to find that she "created" or "confirmed" her victim's "false impression" and that this false impression "bring about" the victim's parting with his money; these instructions reflect the jury instructions approved in Zorich and Casey. CP at 39-40. We hold, therefore, that the jury instructions "properly inform[ed] the trier of fact of the applicable law" relating to "reliance" as defined in Casey and Zorich and that the trial court did not abuse its discretion in giving them. See Aguirre, 168 Wash.2d at 364, 229 P.3d 669.

C. Additional Unanimity Instruction
¶ 21 Citing Petrich, Knutz next argues that the trial court committed reversible error in failing, sua sponte, to instruct the jury that they must be unanimous about the manner in which Knutz committed the charged theft in light of "the [State's reliance] on multiple acts occurring over the course of three years to establish that Ms. Knutz committed [first degree theft]." Br. of Appellant at 14. Again, we disagree.

1. Failure to preserve issue for review; no manifest constitutional error
¶ 22 Knutz did not request a "specifictheft-unanimity" instruction below. Nor did she object to the trial court's alleged "failure" to give such an instruction sua sponte. Thus, RAP 2.5(a) precludes her from raising this issue for the first time on appeal unless she can show that the lack of an additional unanimity instruction is a "manifest error affecting a constitutional right." RAP 2.5(a)(3).
¶ 23 Knutz contends that the trial court's failure to give a unanimity instruction violated her state constitutional right to a unanimous jury verdict and her federal constitutional right to a jury trial. Characterizing an alleged error as a violation of a constitutional right, however, does not automatically meet the RAP 2.5(a)(3) threshold for our reviewing even a constitutional error raised for the first time on appeal. To fall within this exception, however, not only must the claimed error "implicate[ ] a constitutional *443 interest as compared to another form of trial error," but also it must be "manifest": The trial record must be sufficiently complete such that we can determine whether the asserted error "actual[ly] prejudice[d]" the appellant by having "practical and identifiable consequences [at] trial." State v. O'Hara, 167 Wash.2d 91, 98-99, 217 P.3d 756 (2009) (citations omitted). But "[i]f the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest." State v. McFarland, 127 Wash.2d 322, 333, 899 P.2d 1251 (1995) (citing State v. Riley, 121 Wash.2d 22, 31, 846 P.2d 1365 (1993)); see also State v. Louthan, 158 Wash.App. 732, 745, 242 P.3d 954 (2010).
¶ 24 Because, however, the test for determining whether an alleged error is "manifest" is closely related to the test for the substantive issue of whether a Petrich instruction was required, we conflate these two analyses and address Knutz's substantive argumentin this following subsection. We hold that because no additional Petrich unanimity instruction was required for this continuing course of conduct, there was no "manifest error affecting a constitutional right." Therefore, not only is Knutz precluded from raising this issue for the first time on appeal, but also, even were we to address her argument, she would fail to establish reversible error on this ground.

2. "Continuing course of conduct"no additional unanimity instruction required
¶ 25 A criminal defendant has a constitutional right to a unanimous jury verdict. State v. Smith, 159 Wash.2d 778, 783, 154 P.3d 873 (2007) (citing Wash. Const. art. I, § 21; State v. Stephens, 93 Wash.2d 186, 190, 607 P.2d 304 (1980)). In addition, in some instances where the State presents evidence of several distinct acts, it may be necessary to ensure unanimity on a different level, namely to ensure that the jury reaches a unanimous verdict on one particular criminal act. See State v. Handran, 113 Wash.2d 11, 17, 775 P.2d 453 (1989) (citing Petrich, 101 Wash.2d 566, 683 P.2d 173). Although, therefore, a separate unanimity instruction may be sometimes required if the State presents evidence of "`several distinct acts,'" no additional unanimity instruction is required if the evidence indicates a "continuing course of conduct." Handran, 113 Wash.2d at 17, 775 P.2d 453 (quoting Petrich, 101 Wash.2d at 571, 683 P.2d 173). Such is the case here.
¶ 26 To determine whether criminal conduct constitutes one continuing act, the trial court must evaluate the facts in a "commonsense manner." Handran, 113 Wash.2d at 17, 775 P.2d 453 (citing Petrich, 101 Wash.2d at 571, 683 P.2d 173). To decide whether Knutz's conduct was a "continuous course of conduct" or "several distinct acts," we determine whether the defendant's activity shared a common purpose of promoting a criminal enterprise.
¶ 27 In State v. Barrington, 52 Wash.App. 478, 481, 761 P.2d 632 (1988), review denied, 111 Wash.2d 1033 (1989), Division One of our court addressed an argument similar to Knutz's, where a defendant charged with one count of first degree promoting prostitution under RCW 9A.88.070(1) was convicted of the single charged count based on evidence of many individual acts of prostitution, promoting prostitution, and benefiting from prostitution, all which took place during different times over a period of months. In Barrington, as here, the trial court did not give an additional Petrich instruction that the jury must be unanimous about the specific acts of prostitution that served as the basis for their guilty verdict. Holding that Barrington was not entitled to a Petrich instruction, Division One reasoned that Barrington had used the prostitute in order "to promote an enterprise with a single objectiveto make money." Barrington, 52 Wash.App. at 481, 761 P.2d 632. Thus, all of the discrete incidents "were primarily illustrative of the nature of the enterprise rather than solely descriptive of separate distinct acts or transactions." Barrington, 52 Wash.App. at 481, 761 P.2d 632.
¶ 28 We apply and adopt Barrington here. Like Barrington, Knutz used Von Gruenigen "to promote an enterprise with a single objection"to obtain money through deceit. Although Von Gruenigen provided cash "loans" to Knutz on numerous, separate occasions *444 over a period of two years, these cash transfers indicate that Knutz engaged in a "continuous course of conduct" engaged in by Knutz over a long period of time, rather than "solely descriptive of separate distinct acts or transactions." Handran, 113 Wash.2d at 17, 775 P.2d 453 (quoting Petrich, 101 Wash.2d at 571, 683 P.2d 173); Barrington, 52 Wash. App. at 481, 761 P.2d 632.
¶ 29 More recently, in State v. Garman, 100 Wash.App. 307, 314, 984 P.2d 453 (1999), Division One similarly held that several defendants were not entitled to a Petrich instruction, even though a jury convicted them of a single count of first degree theft based on multiple, different incidents of stealing revenue from a solid waste utility transfer center while they were employees of the utility. The Garman court held that the evidence established a continuing course of conduct because the State charged the defendants specifically with one count of "theft based on a common scheme or plan," rather than with "individual acts of theft." Garman, 100 Wash.App. at 314, 984 P.2d 453. Similarly here, the State charged Knutz with one count of theft based on a an ongoing course of conduct, rather than with individual acts of theft.
¶ 30 We also follow and adopt Garman here. Here, the State alleged in the charging instrument that the first degree theft charge was actually a "series of offenses in that the offense involved . . . multiple incidents per victim," CP at 28, language similar to the "based on a common scheme or plan" language in the charging instrument in Garman, 100 Wash.App. at 314, 984 P.2d 453. Because the State essentially characterized Knutz's single count of first degree theft as a "continuing course of conduct," Handran, 113 Wash.2d at 17, 775 P.2d 453, Knutz was not entitled to a Petrich instruction.[8] We hold, therefore, that the trial court did not abuse its discretion by not giving the jury a Petrich instruction sua sponte.

II. Exceptional Sentence
¶ 31 Knutz next argues that the trial court's exceptional sentence of five years "was clearly excessive." Br. of Appellant at 18 (quoting 9.94A.585(4)(b)). We disagree.
¶ 32 Based on a determination of substantial and compelling reasons supported by the jury's aggravating factor findings, the sentencing court may exercise its discretion to determine the length of an appropriate exceptional sentence. State v. Kolesnik, 146 Wash.App. 790, 805, 192 P.3d 937 (2008), review denied, 165 Wash.2d 1050, 208 P.3d 555 (2009). We review whether an exceptional sentence is clearly excessive for an abuse of discretion. Kolesnik, 146 Wash. App. at 805, 192 P.3d 937. A "`clearly excessive'" sentence is one that is clearly unreasonable, "`i.e., exercised on untenable grounds or for untenable reasons, or an action that no reasonable person would have taken.'" Kolesnik, 146 Wash.App. at 805, 192 P.3d 937 (internal quotation marks omitted) (quoting State v. Ritchie, 126 Wash.2d 388, 393, 894 P.2d 1308 (1995)).
¶ 33 When a sentencing court bases an exceptional sentence on proper reasons, we rule that sentence excessive only if its length, in light of the record, "`shocks the conscience.'" Kolesnik, 146 Wash.App. at 805, 192 P.3d 937 (internal quotation marks omitted) (quoting State v. Vaughn, 83 Wash. App. 669, 681, 924 P.2d 27 (1996) (quoting *445 Ritchie, 126 Wash.2d at 396, 894 P.2d 1308)). A sentence that shocks the conscience is one that "no reasonable person would adopt." State v. Halsey, 140 Wash.App. 313, 324-25, 165 P.3d 409 (2007). We find no abuse of discretion in the trial court's imposition of an exceptional sentence in light of the record here.
¶ 34 The jury found all three aggravating factors that the State alleged: (1) vulnerability of the victim, (2) multiple thefts from the same victim, and (3) "actual monetary loss substantially greater than typical for the offense," namely more than one-third of a million dollars. CP at 27. Furthermore, the five-year sentence was only half the 10-year statutory maximum term that the legislature provides for this offense. RCW 9A.20.021(1)(b); CP at 6. Given that the trial court has "`all but unbridled discretion in setting the length of the sentence,'"we hold that the trial court's five-year exceptional sentence for Knutz does not "shock the conscience," especially, as the trial court aptly noted, in light of the extreme amounts of money that Knutz took from her elderly victim over the years. Halsey, 140 Wash.App. at 325, 165 P.3d 409 (quoting State v. Creekmore, 55 Wash.App. 852, 854, 783 P.2d 1068 (1989), abrogation on other grounds recognized by State v. Ramos, 124 Wash.App. 334, 341 n. 27, 101 P.3d 872 (2004)).
¶ 35 We affirm.
We concur: WORSWICK, A.C.J., and VAN DEREN, J.
NOTES
[1] State v. Petrich, 101 Wash.2d 566, 683 P.2d 173 (1984), overruled on other grounds, State v. Kitchen, 110 Wash.2d 403, 405-06, 756 P.2d 105 (1988).
[2] Sometimes, Von Gruenigen used an ATM to withdraw cash from his Bank of America account. Other times, he used his TD Ameritrade account to write himself a check drawn on that account and cash it at Bank of America.
[3] See Ex. 51 at. 2-3.
[4] We refer to Detective Buster by his last name because the record before us does not include his first name; we intend no disrespect.
[5] Knutz has three juvenile convictions: two convictions for third degree assault and one conviction for third degree theft.
[6] The dictionary defines "induce" as "to move and lead (as by persuasion or influence)." Webster's Third New Int'l Dictionary 1154 (1969).
[7] The dictionary defines "believe" as "to take (a statement or a person making a statement) as true, valid, or honest." Webster's Third New Int'l Dictionary 200 (1969).
[8] We further note that the trial court gave the jury the standard instruction that, in order to convict, it must find unanimously that Knutz induced Von Gruenigen to give her money based on his false impression of Knutz's representations to him. Although the State charged Knutz with only a single count of first degree felony based on a course of conduct involving multiple transactions, several of these transactions involved Von Gruenigen's loaning Knutz far in excess of the first degree theft $1,500 threshold: Between October 1, 2007, and March 7, 2008, Von Gruenigen provided Knutz with 43 cash loans, all but one of which exceeded the $1,500 threshold for first degree theft, including loans for $20,000, $10,000, $11,500, and $13,700. Any one of these loans standing alone would have satisfied the minimum monetary amount for first degree theft, even if the State had not included them in a continuing course of conduct comprising a single count. Because the jury heard evidence of several individual thefts, any one of which would have satisfied the elements of first degree theft under RCW 9A.56.030 regardless of whether the trial court had required the jury to agree unanimously on individual instances of Knutz's conduct, it is highly improbable that the verdict would have differed.