FILED
COURT OF APPEALS
DIVISION II

2013 MAR 12 AM 8: 41

STATE OF WASHINGTON
BY
DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                Appellant,<br><br>   v.<br><br>LINDA ACOSTA,<br><br>                Respondent. | No. 43348-6-II<br><br><br>UNPUBLISHED OPINION |

BJORGEN, J. — Linda Acosta appeals the imposition of an exceptional sentence, arguing that her sentence was excessive and constitutes cruel or unusual punishment. Finding no error, we affirm her sentence.[1]

FACTS

Acosta worked as the general manager of Hokold Development, a business owned by Oscar and Olivann Hokold. Between 2003 and August 2010, Acosta stole $1,424,271.65[2] from the Hokolds through fraudulent use of business checks. She was charged with three counts of first degree theft.

Count I, covering 2003 through 2006, charged Acosta with writing 78 checks for a total amount of $518,703.11. Count II, covering 2007 through August 31, 2009,[3] charged her with writing 41 checks totaling $786,740.01. Through Count III, for the

_____

[1] A commissioner of this court initially considered this appeal as a motion on the merits under RAP 18.14 and then referred it to a panel of judges.

[2] The record for the sentencing hearing reflects an incorrect total for all three counts.

[3] At the end of the time period covered by Counts I and II, the theft statute changed the base amount for first degree theft from $1,500 to $5,000.

period September 1, 2009 through August 2010, she was charged with writing 18 checks for a total amount of $118,828.53.

On March 7, 2012, after the beginning of trial, Acosta pleaded guilty to all three counts. In her plea agreement, Acosta signed off on the factual basis for her plea, which included "the elements of the charges and aggravating factors as alleged." Report of Proceedings (RP) (Mar. 7, 2012) at 4. The court advised Acosta that the State planned to seek an exceptional sentence "based upon the aggravating factors that you have agreed to." RP (Mar. 7, 2012) at 5. The stipulated aggravating factors were that the crimes (1) involved multiple victims and multiple incidents; (2) showed a substantially greater than typical monetary loss; (3) involved a high degree of sophistication; (4) involved an abuse of position or trust; and (5) took place over a long period of time.

At sentencing, the State requested 120 months each for Counts I and II and 60 months for Count III, to run consecutively, for a total sentence of 300 months, or 25 years. Acosta requested a 5 to 7 year total sentence because, in part, the standard range for each theft count was 3 to 9 months, to be served concurrently. The statutory maximum for first degree theft, a class B felony during all of the charging periods, is 10 years and/or $20,000. RCW 9A.20.021(1)(b), .56.030(2).

The superior court found "compelling and substantial reasons to justify an exceptional sentence" based on the stipulated aggravating factors. RP (Mar. 7, 2012) at 23. The court rejected the State's recommendation of 300 months on the ground that it does not "result[] in [parity] for you." RP (Mar. 7, 2012) at 26. Looking "to others who have committed similar offenses," the superior court imposed a total sentence of 192 months, broken down as consecutive sentences of 72 months each for Counts I and II and

48 months for Count III. RP (Mar. 7, 2012) at 26-27; Clerk's Papers at 23-35. Acosta appeals.

## ANALYSIS

A.    Requirements for Imposing Exceptional Sentence

RCW 9.94A.510 sets out the standard sentencing ranges for various crimes. As noted, the standard range for each count of first degree theft is three to nine months.

The trial court may impose a sentence outside the standard range if it finds that there are substantial and compelling reasons justifying an exceptional sentence. RCW 9.94A.535. Consecutive sentences may be imposed if the requirements for exceptional sentences in RCW 9.94A.535 are met. RCW 9.94A.589.

According to RCW 9.94A.535, a sentence above the standard range must rest on one or more of the aggravating factors which it lists. Among these is characterization of the crime as a:

> major economic offense or series of offenses, so identified by a consideration of any of the following factors:
> (i) The current offense involved multiple victims or multiple incidents per victim;
> (ii)  The current offense involved attempted or actual monetary loss substantially greater than typical for the offense;
> (iii) The current offense involved a high degree of sophistication or planning or occurred over a lengthy period of time; or
> (iv) The defendant used his or her position of trust, confidence, or fiduciary responsibility to facilitate the commission of the current offense.

RCW 9.94A.535(3)(d)(i-iv).

The defendant stipulated to each of these aggravating factors. In imposing the exceptional sentence, the court below discussed each of these factors and stated why it felt each was present.

3

B.   Trial Court Did Not Abuse Its Discretion in Imposing Exceptional Sentence

To reverse an exceptional sentence, an appellate court must find: (1) under the "clearly erroneous" standard, the reasons for departure from the standard range are not supported by the record; (2) as a matter of law, the stated reasons do not justify the exceptional sentence; *or* (3) under the "abuse of discretion" standard, the sentence imposed is clearly excessive or too lenient. *State v. Hutsell*, 120 Wn.2d 913, 916, 845 P.2d 1325 (1993). Acosta stipulated to the presence of aggravating factors under RCW 9.94A.535, removing any challenge under the first two of these grounds. Thus, she can only seek reversal under the "abuse of discretion" prong.

Turning to that standard, a "clearly excessive" sentence is one that is clearly unreasonable, "'i.e., exercised on untenable grounds or for untenable reasons, or an action that no reasonable person would have taken.'" *State v. Ritchie*, 126 Wn.2d 388, 393, 894 P.2d 1308 (1995) (quoting *State v. Oxborrow*, 106 Wn.2d 525, 531, 723 P.2d 1123 (1986)). When a sentencing court does not base its sentence on improper reasons, we will find a sentence excessive only if its length, in light of the record, "'shocks the conscience.'" *State v. Vaughn*, 83 Wn. App. 669, 681, 924 P.2d 27 (1996) (internal quotation marks omitted) (quoting *Ritchie*, 126 Wn.2d at 396), *review denied*, 131 Wn.2d 1018 (1997).

Acosta points out that her sentence was more than twenty-one times the upper-end of the three to nine month standard range sentence and argues that this is clearly excessive in light of the punishment of other crimes. In support, she cites the decision in *State v. Delarosa-Flores*, 59 Wn. App. 514, 799 P.2d 736 (1990), which vacated an exceptional sentence that was six times the standard range, much less than the twenty-one

times the standard range imposed on her. *Delarosa-Flores*, however, involved an exceptional sentence of 30 years for three counts of first degree rape. The court held that of the five aggravating factors relied on, only two were shown and they did not support a sentence of 30 years. *Delarosa-Flores*, 59 Wn. App. At 5-18-520. Thus, *Delarosa-Flores* is relevant, but far from conclusive.

Acosta also points out that with an offender score of 2, a standard range sentence of 72 months would only be possible under RCW 9.94A.510 for crimes such as first degree child molestation, first degree kidnapping and leading organized crime, which are far more serious than what she committed. Her argument is correct as far as it goes, but is based on a comparison of the standard range of one conviction of these more serious offenses with the cumulative sentence of three convictions for first degree theft with aggravating circumstances. It is not arbitrary or irrational to punish multiple convictions of a less serious crime with aggravating circumstances at a level similar to that of a single instance of a more serious crime without aggravating features.

A more productive comparison lies with cases involving exceptional sentences for crimes of theft. *State v. Branch*, 129 Wn.2d 635, 919 P.2d 1228 (1996), for example, affirmed a sentence of 48 months for first degree theft in the amount of $398,652.91. The court held that the trial court did not abuse its discretion in imposing a 48-month sentence "because 48 months is not a clearly excessive sentence for a theft of nearly $400,000." *Branch*, 129 Wn.2d at 650.

In *Oxborrow*, 106 Wn.2d at 528, our Supreme Court affirmed a 10-year sentence for first degree theft for defrauding approximately 51 investors of over $1 million, to be served consecutively to a 5-year sentence for willful violation of a cease and desist order.

In examining whether the theft sentence was clearly excessive, the court noted that, at the time, first degree theft could involve an amount as little as $1,500, such that the presence of a fraud involving over $1 million was "the quintessential crime for which the Legislature contemplated a maximum sentence." *Oxborrow*, 106 Wn.2d at 533.

Finally, in *State v. Knutz*, 161 Wn. App. 395, 399 253 P.3d 437 (2011), a superior court imposed a five year sentence for the theft of $347,000 from a single elderly victim over a three-year period. The sentencing court noted that the total amount of theft was "210 times the [then-]minimum" amount of $1,500. *Knutz*, 161 Wn. App. at 402. We affirmed the exceptional sentence in light of the "extreme amounts of money that Knutz took from her elderly victim over the years." *Knutz*, 161 Wn. App. at 411.

Here, the total amount taken was over three times the amounts involved in *Branch* (approximately $400,000) and *Knutz* (approximately $350,000), and Acosta's total sentence of 16 years is also three to four times the length of the sentences in *Branch* (4 years) and *Knutz* (5 years). Thus, Acosta's sentence does not appear unreasonable in light of these sentences. Further, although the total amount of Acosta's theft exceeded the amount in *Oxborrow*, unlike in *Oxborrow*, the sentencing court here did not impose the maximum 10-year sentence for any of her theft counts.

In addition, looking at single counts in light of the 10-year maximum imposed for a loss of $1 million in *Oxborrow*, Acosta received 6-year sentences for losses of approximately $785,000 (Count I) and $500,000 (Count II), essentially receiving sentences between 50 percent and 78 percent of the 10-year statutory maximum for each count for losses that were 50 to 70 percent of the losses in *Oxborrow*. Moreover, in light of the minimum amount of loss necessary to convict for first degree theft, the fact that the

total amount of loss here was over 284 times the now-minimum amount of $5,000 further shows that the sentencing court did not abuse its discretion. *See Oxborrow*, 106 Wn.2d at 533 (looking to minimum amount); *Knutz*, 161 Wn. App. at 203 (noting that the total amount of theft was 210 times the then-minimum amount of $1,500).

In comparison to other exceptional sentences for theft imposed on defendants with little or no criminal history, Acosta's total theft sentence does not shock the conscience in light of the presence of multiple stipulated aggravating factors.

C.    Exceptional Sentence Not Cruel and Unusual Punishment

Acosta argues that her sentence was disproportionate to the crime she committed and constituted cruel and unusual punishment, which is prohibited by amendment 8 to the United States Constitution and article 1, section 14 of the Washington Constitution.

Article I, section 14 of the Washington Constitution prohibits cruel punishment and provides more protection than its eighth amendment federal counterpart. *State v. Fain*, 94 Wn.2d 387, 392, 617 P.2d 720 (1980). It necessarily follows that if the Washington Constitution is not violated, the sentence also does not violate the United States Constitution. *State v. Morin*, 100 Wn. App. 25, 29, 995 P.2d 113, *review denied*, 142 Wn.2d 1010, 16 P.3d 1264 (2000).

Article I, section 14 protects against sentences that are "grossly disproportionate" to the crime committed. "A punishment is grossly disproportionate only if the conduct should never be proscribed . . . or if the punishment is clearly arbitrary and shocking to the sense of justice." *State v. Smith*, 93 Wn.2d 329, 344-45, 610 P.2d 869, *cert. denied*, 449 U.S. 873, 101 S. Ct. 213, 66 L. Ed. 2d 93 (1980). When considering whether a sentence is cruel, we consider (1) the nature of the crime, (2) the legislative purpose

behind the criminal statute, (3) sentences for similar crimes in other jurisdictions, and (4) sentences for similar crimes in our jurisdiction. *State v. Whitfield*, 132 Wn. App. 878, 134 P.3d 1203 (2006), *review denied*, 159 Wn.2d 1012, 154 P.3d 919 (2007).

1. Nature of the Crime

Acosta pleaded guilty to three class B felonies. RCW 9A.56.030(2). She not only stipulated to the presence of multiple aggravating factors, RCW 9.9A535(3)(2), but the superior court also made independent findings to support the presence of these factors.

The court found the crimes involved multiple victims, and even were the court to count the Hokolds as one victim, the crime involved a multiple series of incidents in that Acosta wrote 180 fraudulent checks. The court determined all three crimes involved substantial monetary loss. The court found that the offenses involved a high degree of sophistication, noting that "Acosta started out at the ground level with the Hokold business, she was able to work her way up . . . and became the person in charge, and in that capacity had complete control over the finances of the business." RP (Mar. 7, 2012) at 25. The court added that the offenses occurred over a lengthy period of time. The court also found that Acosta used her position of fiduciary responsibility to facilitate the commission of the offenses because she kept all of the financial materials and documentation in her possession and no one else was able to participate in looking at the books.

In light of these findings, the nature of Acosta's crime is consistent with the lengthy sentence.

2. Legislative Purpose

The present legislative purpose behind the first degree theft statute is to deter theft of amounts of $5,000 or more. RCW 9A.56.030(1)(a). With an offender score of 2, the standard range sentence for Acosta is 3 to 9 months in custody, with a statutory maximum of 10 years and up to a $20,000 fine. RCW 9A.20.021(1)(b); RCW 9.94A.510. However, a sentencing court is authorized to impose an exceptional sentence, RCW 9.94A.537, to allow the court to "tailor the sentence" to the facts of the case. *State v. Davis*, 146 Wn. App. 714, 719-20, 192 P.3d 29 (2008). This is exactly what the court below did. Acosta's sentence is consistent with this legislative purpose.

3. Sentences in Other Jurisdictions

Acosta looks to Oregon and California to argue that her Washington sentence exceeded those she would have received in these jurisdictions.[4] With respect to Oregon, Acosta notes that ORS 137.717(1)(a) sets a presumptive sentence of 19 months for commission of first degree theft[5] in cases in which the defendant has a previous conviction for various listed crimes.

But, as both the State and Acosta acknowledge, Oregon's sentencing scheme, unlike ours, is indeterminate sentencing. This means that a sentencing court has "near absolute discretion" to impose any sentence up to the maximum 10-year term for aggravated first degree theft. Br. of Resp't at 11. With this, it is difficult to draw any fruitful comparison with Oregon law since we do not know what an Oregon sentence

---

[4] We note that Acosta did not submit any authority from either state regarding what that jurisdiction considered a cruel or unusual theft sentence.

[5] Aggravated first degree theft requires a theft in the amount of $10,000 or more. ORS 164.057. It carries a maximum sentence of 10 years. ORS 161.605.

would likely have been with similar aggravating elements. What can be said is that the 19-month presumptive sentence in Oregon for theft over $10,000 is not grossly disproportionate to the 3 to 9-month standard range for theft over $5000 in Washington, especially since both have a 10-year maximum.

Acosta also asserts that her sentence would be lower in California. She relies on the fact that grand theft (a theft of more than $950) has a maximum sentence of imprisonment of not more than one year. CPC 489, 487. The California Penal Code, however, allows for sentencing enhancements. It also contains up to a five-year sentencing enhancement for "white collar" thefts above $500,000. CPC 186.11(a)(1), (2). Moreover, the fine in California for taking more than $500,000 is "not to exceed five hundred thousand dollars ($500,000) or double the value of the taking, whichever is greater." CPC 186.11(c). This is far greater than the maximum $20,000 fine in Washington.

In light of the indeterminate sentencing of up to 10 years for aggravated first degree theft in Oregon and the white collar sentencing enhancements and fine available in California, we cannot say that Acosta's Washington sentence is grossly disproportionate to the crime.

4. Sentences in Washington

As shown above, Acosta's exceptional sentence was not disproportionate to other sentences in Washington.

D.    Conclusion

In sum, we conclude that the trial court did not abuse its discretion in imposing the exceptional sentence and that the sentence is not grossly disproportionate to the crime.  Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjørgen, J.

We concur:

Hunt, J.

Penoyar, J.