IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 79652-6-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAMS, ALLEN JAMES, | ) | UNPUBLISHED OPINION |
| DOB: 08/08/1976, | ) | |
| | ) | |
| Appellant. | ) | |

BOWMAN, J. — Allen James Williams was convicted of driving under the influence of drugs (DUI), escape in the third degree, and six counts of domestic violence felony violation of a no-contact order (VNCO) following a bench trial. He argues that insufficient evidence supports five of the VNCO convictions. He also contends that the court imposed a clearly excessive exceptional sentence and that the terms of community custody cause his sentence to exceed the statutory maximum on all but one of the VNCO counts. We conclude that sufficient evidence supports Williams' convictions and that his sentence is not clearly excessive. But we remand for the court to either amend the community custody terms or resentence within the statutory maximum on all but one count of domestic violence felony VNCO.

Citations and pin cites are based on the Westlaw online version of the cited material.

FACTS

On the evening of December 29, 2017, Washington State Patrol Trooper John Axtman pulled over a gray Mazda driven by Williams for failing to stop at a stop sign. Williams' girlfriend April Jensen sat in the front passenger seat of the car. Williams told Trooper Axtman that he was violating an active no-contact order by being with Jensen. Trooper Axtman conducted a records check and confirmed the existence of a court order protecting Jensen from Williams.

Trooper Axtman noticed signs of intoxication. Williams admitted he used drugs earlier that day and the day before. Trooper Axtman asked Williams to perform field sobriety tests and concluded Williams was driving while under the influence of drugs. He arrested Williams for DUI and VNCO.

Trooper Axtman drove Williams to the hospital for a blood test. After the blood draw, Williams ran from the emergency room. Hospital security eventually caught Williams "on the other side of the hospital." The results of the blood test showed Williams tested positive for amphetamine, methamphetamine, and morphine. Trooper Axtman booked Williams into the Snohomish County jail.

While in jail, Williams continued to contact Jensen in violation of the no-contact order. Jail telephone logs show that between December 29, 2017 and May 18, 2018, Williams made 1,374 calls to the telephone number associated with Jensen. Of these, 67 calls were "completed."

The State charged Williams with one count of DUI, one count of escape in the third degree, and six counts of domestic violence felony VNCO. One of the VNCO counts was for being in the car with Jensen the night of his arrest and the

other five counts were for the calls he made to Jensen from jail. Williams waived his right to a jury trial.

Jensen refused to appear to testify at trial. The State played the video and audio recording of Trooper Axtman's contact with Williams during the traffic stop and his arrest. The recording includes a conversation between Trooper Axtman and Jensen. Trooper Axtman identified the voice on the jail call recordings as that of Jenkins. The court also admitted into evidence the completed calls Williams made from jail to the phone number associated with Jensen. Victim advocate Shervin Sima testified that she had called the same number Williams dialed from jail at least four times and each time Jensen answered.

Williams testified that he had not spoken to Jensen since the night he was arrested. He claimed that the telephone number and the female voice in the recorded jail calls belonged to his other girlfriend "Erin Williams."

The court convicted Williams as charged. The court entered extensive findings of fact and conclusions of law. The court imposed a concurrent suspended sentence of 363 days for the misdemeanor convictions of DUI and third degree escape. With an offender score of 19, including nine prior convictions for domestic violence VNCO between 2005 and 2019, the standard sentence range for each count of felony VNCO was "60-60 months." The court imposed an exceptional sentence above the standard range of 90 months total confinement—60-month concurrent sentences for five counts of domestic violence felony VNCO and a consecutive 30-month sentence for the sixth count.

The court entered findings of fact and conclusions of law in support of the exceptional sentence. The court also imposed 12 months of community custody on each VNCO conviction. Williams appeals.

ANALYSIS

Sufficiency of the Evidence

Williams concedes the evidence supports one count of felony VNCO because Trooper Axtman saw Jensen in the front passenger seat of Williams' car on December 29, 2017. Williams argues that insufficient evidence supports the other five VNCO convictions as to the jail telephone calls.

When assessing whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the State and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt. State v. Homan, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). Following a bench trial, we determine whether substantial evidence supports the trial court's findings of fact and whether the findings in turn support the conclusions of law. State v. Stevenson, 128 Wn. App. 179, 193, 114 P.3d 699 (2005). Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the finding. Stevenson, 128 Wn. App. at 193. Unchallenged findings are verities on appeal. State v. Solomon, 114 Wn. App. 781, 789, 60 P.3d 1215 (2002). We review conclusions of law de novo. Stevenson, 128 Wn. App. at 193.

In claiming insufficient evidence, the defendant admits the truth of the State's evidence and all reasonable inferences drawn therefrom. State v.

Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We defer to the trier of fact to resolve conflicting testimony and evaluate the persuasiveness of the evidence. State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

" 'Circumstantial evidence and direct evidence are equally reliable' in determining the sufficiency of the evidence." State v. Kintz, 169 Wn.2d 537, 551, 238 P.3d 470, 477 (2010) (quoting Thomas, 150 Wn.2d at 874). But inferences based on circumstantial evidence must be reasonable and cannot stem from speculation. State v. Scanlan, 193 Wn.2d 753, 771, 445 P.3d 960, 968 (2019).

A person commits the crime of felony VNCO when the person knows of an existing order, knowingly violates that order, and "has at least two previous convictions for violating the provisions of" a no-contact order. RCW 26.50.110(1)(a), (5). Here, there is no dispute that Williams knew of an existing order prohibiting him from contacting Jensen and that he had at least two prior VNCO convictions. Williams contends that the evidence at trial is insufficient to establish beyond a reasonable doubt that he knowingly violated the no-contact order while he was in jail. He argues that the court "speculated" that the voice on the recorded telephone calls belonged to Jensen.[1] He challenges several of the trial courts findings of fact, including:

16. The Court finds that "Erin" was created so that the Defendant and Ms. Jensen could communicate, or attempt to communicate, in violation of the no contact order.

26. In [jail telephone] call [number 22 made on January 20, 2018], the Defendant referenced telling Trooper Axtman he thought the restraining order was dropped. The female responded by

---

[1] Williams cites various scientific articles that discuss the reliability of voice recognition testimony. However, as Williams did not raise these issues at the trial court, we do not consider them on appeal. RAP 2.5(a); State v. Kirkman, 159 Wn.2d 918, 926, 155 P.3d 125 (2007).

saying, ["]I thought you did not want me to do that." Only April Jensen had a restraining order. There would have been no reason why Erin would have [made] such a comment since Erin did not have a restraining order with the Defendant.

29. April Jensen was the only one that had the no contact order and the only one that would have sought to have it modified or removed, not Erin Williams.[2]

We conclude that substantial evidence supports the court's findings. A jail receptionist and records custodian identified the telephone number that Williams dialed for each count of VNCO. Victim advocate Sima testified that she dialed the same number several times and each time, the person who answered the phone identified herself as Jensen. Trooper Axtman testified that he recognized the female voice on each of the calls and that the voice belonged to Jensen. Trooper Axtman also testified that "there's little bits of information" in the calls "that only [Jensen] would technically know" because she was at the scene of Williams' arrest, such as conversations about confiscating Williams' cell phone and details about the traffic "stop itself," the field sobriety tests, and impounding Williams' car. After reviewing all of the evidence, the court concluded there was "no reasonable doubt" that the "distinctive" voice on the calls "was April Jensen and was not Erin Williams."

Further, the content of many of the calls made clear that Williams was talking to Jensen rather than "Erin." For example, Williams conceded that

---

[2] Williams also challenges findings of fact 34 and 40. He argues that they are actually conclusions of law. Where the court erroneously labels a conclusion of law as a finding of fact, we review it de novo as a conclusion of law. State v. Z.U.E., 178 Wn. App. 769, 779, 315 P.3d 1158 (2014); see State v. Fedorov, 183 Wn. App. 736, 744, 335 P.3d 971 (2014) ("We review findings of fact and conclusions of law not as they are labeled, but for what they truly are."). But because Williams challenges only the labeling of the conclusions, not their sufficiency, we do not address them. See RAP 10.3(a)(6).

Jensen was "the only person [he] had a no-contact order with at the time of this incident." In one of the recorded calls, he talks specifically about dropping the no-contact order. He tells Jensen, "The ball is in your court" and to "just get on it will [you] please." In another recording, Williams states he told Trooper Axtman that he thought the no-contact order had been dropped. Jensen responds, "I thought you did not want me to do that."

Finally, the unchallenged findings establish that Williams often referred to "Erin" in the third person during the calls with Jensen and that Jensen was sometimes confused about who Williams was talking about. For example, during one of the calls, Williams told Jensen, "That chick told me she had that restraining order dropped." Jensen was "clearly confused." Williams attempted to refocus her by saying, "You picking up what I'm putting down?" Jensen responded, "Yes, yeah."

Viewing the evidence in a light most favorable to the State, a reasonable finder of fact could conclude that Williams knowingly violated an existing no-contact order. Sufficient evidence supports his convictions.

Exceptional Sentence

Williams argues that the trial court abused its discretion by imposing a "clearly excessive" sentence. We disagree.

A trial court may impose a sentence outside the standard range if it finds that there are "substantial and compelling reasons" to do so. RCW 9.94A.535. A sentence outside the standard range is subject to appeal. RCW 9.94A.585(2). But we may reverse a sentence outside the standard sentence range only if we

7

find (a) the reasons provided by the sentencing court are not supported by the record or (b) the sentence was "clearly excessive." RCW 9.94A.585(4). A "clearly excessive" sentence is one that is exercised on untenable grounds or for untenable reasons or that is based on an action that no reasonable person would have taken. State v. Knutz, 161 Wn. App. 395, 410, 253 P.3d 437 (2011). When the trial court bases an exceptional sentence on proper reasons, a sentence is excessive "only if its length, in light of the record, . . . shocks the conscience." Knutz, 161 Wn. App. at 410-11. We review whether an exceptional sentence is clearly excessive for an abuse of discretion. Knutz, 161 Wn. App. at 410.

Here, the trial court imposed an exceptional sentence under RCW 9.94A.535(2)(c). RCW 9.94A.535(2)(c) authorizes a trial court to depart from the standard range when a defendant has "committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished." Williams does not dispute that the record supports the court's authority to depart from the standard range. He argues that the consecutive 30 months added to his standard-range sentence is "clearly excessive" because the court found Jensen's willing participation in the crimes was a mitigating factor.

We conclude Williams' sentence was not clearly excessive. Williams had an offender score of 19 on each of the six felony counts of domestic violence VNCO. His criminal history includes multiple domestic violence VNCO convictions. The standard-range sentence for each count of VNCO is 60 months to run concurrently.[3] Had the court imposed concurrent sentences on all six

---

[3] See RCW 9.94A.589(1)(a).

counts, Williams would serve a total of 60 months in prison. This is the same sentence Williams would serve if convicted of only one count of VNCO. Thus, five of the six felony charges would have gone unpunished had the court imposed a standard-range sentence. Instead, the court imposed a concurrent standard-range sentence on five of the VNCO counts and a consecutive 30-month sentence on one count for a total of 90 months. The court's sentence was not exercised on untenable grounds or for untenable reasons. And it does not shock the conscience given the number of current felony VNCO convictions before the court and Williams' extensive criminal history.

Statutory Maximum Sentence

Williams argues that the trial court abused its discretion when it imposed a term of community custody exceeding the statutory maximum sentence on all but one of the counts of felony VNCO. We agree.

RCW 9.94A.701(9) prohibits imposing a term of community custody that "exceeds the statutory maximum for the crime." See State v. Boyd, 174 Wn.2d 470, 472, 275 P.3d 321 (2012) (per curiam). Williams was convicted of class C felonies. RCW 26.50.110(5). The statutory maximum sentence for a class C felony is 60 months. RCW 9A.20.021(1)(c). The court sentenced Williams to 60 months in custody on five of the VNCO convictions as charged in counts 1, 5, 6, 7, and 8. It also imposed 12 months of community custody for each of those counts. Combined with his prison sentence, Williams' 12-month community custody term exceeds the 60-month maximum sentence.

We remand to the trial court to either amend the community custody terms or resentence on the applicable counts.

Statement of Additional Grounds

Williams filed a statement of additional grounds for relief. We address his claims to the extent that we can discern the allegations. See RAP 10.10(c).

Williams argues he received ineffective assistance of counsel. To succeed on a claim of ineffective assistance of counsel, Williams must show that his attorney's representation fell below an objective standard of reasonableness and the deficient representation caused prejudice. State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Courts apply a strong presumption that defense counsel's trial choices fall within a wide range of reasonable professional assistance. State v. Grier, 171 Wn.2d 17, 38, 246 P.3d 1260 (2011) (citing Strickland v. Washington, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). This includes decisions about which witnesses to call for trial and what evidence to present at trial. In re Pers. Restraint Petition of Davis, 152 Wn.2d 647, 742, 101 P.3d 1 (2004); In re Pers. Restraint of Lui, 188 Wn.2d 525, 552, 397 P.3d 90 (2017).

Williams claims that his attorney played for the court only selective parts of the video from Trooper Axtman's patrol car dashboard camera, portions he describes as "beneficial to the State"; did not call several witnesses for trial that Williams believes would have benefitted him; and did not adequately "question" Sergeant James Arnold. Williams fails to show that his attorney's tactical decisions were deficient.

Williams also claims that he was denied his right to CrR 3.5 and 3.6 hearings and that he was precluded from pointing out that Trooper Axtman conducted the field sobriety tests outside the view of his dashboard camera.[4] Williams is mistaken. The court conducted both CrR 3.5 and 3.6 hearings before trial. And Williams questioned Trooper Axtman about the failure to video record the field sobriety tests during cross-examination.

We affirm Williams' convictions but remand to either amend the community custody terms or resentence within the statutory maximum on all but one count of domestic violence felony VNCO.

Brennan, J

WE CONCUR:

Appelwick, J.

---

[4] Williams refers to this as a "Brady v. Maryland issue" but raises no claim that the State withheld exculpatory evidence. See Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).