234 P.3d 253 (2010)
156 Wash.App. 378
STATE of Washington, Respondent,
v.
Titus Vincent EPEFANIO, Appellant.
No. 27578-7-III.
Court of Appeals of Washington, Division 3.
May 27, 2010.
Reconsideration Denied June 16, 2010.
*255 David L. Donnan, Oliver Ross Davis, Washington Appellate Project, Seattle, WA, for Appellant.
Mark Erik Lindsey, Spokane County Prosecuting Attorney, Spokane, WA, for Respondent.
SWEENEY, J.
¶ 1 This is a prosecution for rape of a child in the third degree. The defendant testified in his own defense. The State tried to cross-examine on matters beyond the scope of direct examination. The trial court refused to allow the inquiry but then allowed the State to call the defendant as a rebuttal witness after concluding that the defendant had waived his Fifth Amendment right. We conclude that it was error but we also conclude that it was harmless error. We also conclude that the court properly submitted an aggravating factor to the jury and that the aggravating factor supports the court's imposition of an exceptional sentence. We affirm the conviction and sentence.

FACTS
¶ 2 Brianna Summers was born on October 2, 1987. She met Titus Epefanio in the fall of 2002. Mr. Epefanio was 25 years old. He worked as a teacher's aide and boys basketball coach at Salk Middle School in Spokane, Washington. Ms. Summers attended Salk Middle School. She was in the seventh grade. Mr. Epefanio asked Ms. Summers to manage the basketball team. She agreed to do so. Ms. Summers continued to manage a junior high team for Mr. Epefanio through the spring of her freshman year in 2003.
¶ 3 Mr. Epefanio invited Ms. Summers to work out with him, within a week of the basketball season ending in the early spring of 2003. Mr. Epefanio picked up Ms. Summers for the workout and drove her to his house to get clothes. Both entered the house and engaged in sexual intercourse. And they did so again that spring.
¶ 4 In June 2003, Ms. Summers went to Alaska to visit relatives for a month. Ms. Summers and Mr. Epefanio resumed their sexual relationship when she returned. They engaged in sexual intercourse at least twice a week. The sexual relationship continued until Ms. Summers turned 16October 2, 2003. Ms. Summers became pregnant in the fall of 2004 and moved in with Mr. Epefanio. Their relationship deteriorated after the baby was born in May 2005 and they separated.
*256 ¶ 5 Mr. Epefanio and Ms. Summers broke up in the fall of 2005 and fought over custody of their child. Ms. Summers sued the school district for damages. Ms. Summers eventually told police about her relationship with Mr. Epefanio. The State charged Mr. Epefanio with sexual misconduct in the first degree and rape of a child in the third degree.
¶ 6 At trial, Ms. Summers testified about the history of their relationship. She recalled that she and Mr. Epefanio had sex on the first day of school of her freshman year in 2003. Ashley Pugh was a close friend of Ms. Summers during the 2002-03 school year. She testified that during the summer of their freshman year, she would drive around with Ms. Summers and Mr. Epefanio. She stated that during two of these trips, she witnessed Ms. Summers have sex with Mr. Epefanio.
¶ 7 Jared Pilon testified he and Ms. Summers dated in the eighth grade and part of the ninth grade. He ended their relationship when he discovered Ms. Summers was seeing Mr. Epefanio. Also sometime in 2003 he informed Ms. Summers' parents about their daughter's relationship with Mr. Epefanio and confronted Mr. Epefanio in front of Ms. Summers' parents.
¶ 8 Mr. Epefanio moved to dismiss both counts when the State rested. The trial court dismissed the first degree sexual misconduct charge but refused to dismiss the third degree rape charge.
¶ 9 Mr. Epefanio testified on his own behalf and denied having sex with Ms. Summers when she was 15. The State tried to cross-examine Mr. Epefanio about his confrontation with Mr. Pilon in front of Ms. Summers' parents. The court concluded that the inquiry was outside the scope of direct examination and refused to allow it. But then the court permitted the State to call Mr. Epefanio, over his objection, as a witness for the State in rebuttal and inquire into the matter. The court reasoned that Mr. Epefanio had already waived his Fifth Amendment right by testifying in his own case.
¶ 10 A jury found Mr. Epefanio guilty of third degree rape of a child. It also returned a special verdict that the offense was "part of an ongoing pattern of sexual abuse of the same victim under the age of 16 years manifested by multiple incidents over a prolonged period of time." Report of Proceedings (RP) at 935; Clerk's Papers (CP) at 135.
¶ 11 Mr. Epefanio moved for relief from judgment and argued that the State violated his Fifth Amendment privilege against self-incrimination when it called him as a rebuttal witness in its case. The trial court denied the motion.
¶ 12 Mr. Epefanio's standard range was 12 to 14 months. The trial court imposed an exceptional sentence of 20 months based on the jury's special verdict. Mr. Epefanio appeals both the conviction and the exceptional sentence.

DISCUSSION

SUFFICIENCY OF THE EVIDENCE INTERCOURSE DURING RELEVANT TIME PERIOD
¶ 13 Mr. Epefanio argues that the jury could not find that he had intercourse with Ms. Summers during the relevant time (August 23, 2003 to October 1, 2003) based on the State's showing.
¶ 14 The standard of review here is substantial evidence. State v. Halstien, 122 Wash.2d 109, 128-29, 857 P.2d 270 (1993). We pass on whether the State produced sufficient evidence, which, if believed, would support the requisite elements of this crime; we do not pass on how persuasive that evidence was. State v. Henjum, 136 Wash.App. 807, 810, 150 P.3d 1170 (2007). Circumstantial evidence and direct evidence are equally reliable. State v. Delmarter, 94 Wash.2d 634, 638, 618 P.2d 99 (1980). So the jury may draw reasonable inferences from the direct evidence.
¶ 15 The State had to show that "on or about between August 23, 2003 and October 1, 2003, being at least forty-eight months older than, and not married to the victim, [Mr. Epefanio] did engage in sexual intercourse with the victim, who was 15 years old." CP at 47; RCW 9A.44.079(1). Intercourse has its "ordinary meaning and occurs upon any penetration, however slight," and *257 also meaning "any penetration of the vagina or anus however slight, by an object," or "any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another." RCW 9A.44.010(1)(a)(c).
¶ 16 Ms. Summers returned from Alaska in the summer of 2003 and she and Mr. Epefanio tried to see each other every day to "have sex." RP at 311, 315, 324. Sex that easily met the requirements of the statute. This is undisputed. Ms. Summers testified that during the summer of 2003 she and Mr. Epefanio had sex at least twice a week. Ms. Summers recalled engaging in intercourse with Mr. Epefanio on the first day of school in 2003. This record also supports other qualifying sexual contact during the relevant charging period.
¶ 17 There is then ample evidence, direct and circumstantial, from which a jury could find that Mr. Epefanio engaged in sexual intercourse, as defined by statute, with Ms. Summers while she was 15 years old. RCW 9A.44.010(1)(a)-(c). Again, how persuasive that evidence was is for the finder of fact, here the jury, not us. State v. E.J.Y., 113 Wash.App. 940, 952, 55 P.3d 673 (2002).

FIFTH AMENDMENT PROHIBITION AGAINST SELF-INCRIMINATION
¶ 18 During direct examination, Mr. Epefanio testified that Mr. Pilon made Ms. Summers have sex with him in front of others. The State did not cross-examine Mr. Epefanio about this testimony and instead tried to question Mr. Epefanio about the confrontation between Mr. Pilon and Mr. Epefanio at Ms. Summers' house. The trial court sustained defense counsel's objection that the State's inquiry was outside the scope of his direct testimony. But the court then invited the State to recall Mr. Epefanio as a State's rebuttal witness:
[PROSECUTING ATTORNEY]: And when you were confronted by Jared Pilon out on [Ms. Summers' parents'] lawn
MR. NOTE: Objection. Outside the scope of direct or cross.
THE COURT: It is, but we can do it now or [the prosecuting attorney] can call him again. So what would you rather do? And yes, it is beyond the scope of the redirect. You get to make your own ruling.
MR. NOTE: A, Your Honor, it is outside the scope. I would like to at least stay in the scope on this.
THE COURT: Okay. You don't have to answer.
RP at 873-74.
¶ 19 The defense rested after this exchange. The State then called Mr. Epefanio as its own witness in rebuttal. Mr. Epefanio objected that he was being compelled to testify against himself in violation of the Fifth Amendment. The prosecutor argued that Mr. Epefanio had already waived his privilege against self-incrimination. The trial court agreed with the State: "[Mr. Epefanio] is not [the State's] rebuttal witness, he is just like all the other State's witnesses that [the State] had on call." RP at 875.
¶ 20 The State proceeded to question Mr. Epefanio about the Pilon incident as follows:
Q You were at her house when Jared Pilon showed up and made an accusation against you?
A I wasn't there when he showed up, no.
Q Were you there during that incident?
A Later, yeah.
Q And you said that Miss Summers said Jared Pilon had done stuff to her?
....
A Yes.
Q You were there when Mr. Pilon was making accusations against you?
A Uh-huh.
Q And you were concerned for her safety?
A Uh-huh.
Q You didn't tell the folks anything about Jared Pilon at that time, did you?
A No, I didn't.
[PROSECUTING ATTORNEY]: No further questions.
RP at 877-78.
¶ 21 Mr. Epefanio argues that this was both improper and prejudicial. He argues *258 that rebuttal witnesses are called by the prosecuting attorney to meet new matters raised by the defense's case in chief. State v. White, 74 Wash.2d 386, 394-95, 444 P.2d 661 (1968). Mr. Epefanio argues that "[b]y definition, the State as plaintiff calling a defense witness in such order, after the defense rests its case, is not `re-opening' its examination of a defense witness." Appellant's Br. at 24. Mr. Epefanio argues that such a procedure is an anathema to the constitutional structure of trial in a modern accusatorial system. The United States and Washington State Constitutions guarantee that no person shall be compelled in any criminal case to be a witness against himself. And he notes that, RCW 10.52.040 prohibits compelling an "accused person to offer himself or herself as a witness in such case." A defendant can waive the privilege where he testifies in his defensebut such waiver extends only to cross-examination within the scope of the defendant's direct testimony. "[C]ross examination marks the termination of the State's opportunity to question the defendant." Appellant's Br. at 37.
¶ 22 He also argues that the error was not harmless and, indeed, that the error amounted to structural error that requires automatic reversal because prejudice is presumed. Neder v. United States, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999).
¶ 23 The State responds that Mr. Epefanio waived his Fifth Amendment protection by testifying on his own behalf. It argues that the rebuttal testimony was appropriate here because Mr. Epefanio had already waived his Fifth Amendment right and, moreover, the decision to allow rebuttal testimony must be put in the context of this trial. Here, Mr. Epefanio waited until his case in chief to testify that Mr. Pilon had made Ms. Summers have sex with him in front of his friends.
¶ 24 The question whether Mr. Epefanio irrevocably waived his Fifth Amendment privilege not to be a witness against himself by testifying on his own behalf is a question of law that we will review de novo. State v. Bankes, 114 Wash.App. 280, 287, 57 P.3d 284 (2002).
¶ 25 First, it is fundamental that a criminal defendant is not required to testify during his own trial. The United States and Washington State Constitutions guarantee that no person shall be compelled in any criminal case to be a witness against himself. U.S. CONST. amend. V; WASH. CONST. art. I, sec. 9. The rule is also memorialized in a statute here in Washington. RCW 10.52.040.
¶ 26 A defendant waives that privilege, however, when he testifies in his own defense. The waiver, however, appears to extend only to cross-examination which, of course, is limited to the scope of the defendant's direct testimony. See State v. Robideau, 70 Wash.2d 994, 1001, 425 P.2d 880 (1967) ("`The rule is that when an accused voluntarily takes the stand he waives his constitutional rights as to all matters concerning which cross-examination is otherwise normally proper.'" (quoting Jones v. United States, 296 F.2d 398, 404 (D.C.Cir.1961))). A defendant cannot claim a Fifth Amendment privilege to cross-examination "on matters reasonably related to the subject matter of his direct examination." McGautha v. California, 402 U.S. 183, 215, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971); Brown v. United States, 356 U.S. 148, 155, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958).
¶ 27 The trial court's rulings highlight the problem here. Rebuttal evidence is limited to new matters presented by the defense. White, 74 Wash.2d at 394, 444 P.2d 661. The State, therefore, is not permitted to call and question a rebuttal witness on anything other than new matters raised by the defense. Id. at 395, 444 P.2d 661. Here, the trial judge had already concluded that the Pilon confrontation was beyond the proper scope of cross-examination and, therefore, refused to allow cross-examination on that topic. We agree. But the same inquiry by the State, then, would not be the appropriate topic for rebuttal. Id.
¶ 28 The State contends, nonetheless, that Mr. Epefanio's waiver of his privilege against self-incrimination extends to testimony against himself as a State rebuttal witness. It notes the privilege is liberally construed and "[w]here the defendant opens the door *259 regarding a particular subject, the State may pursue the subject to clarify a false impression." Resp't's Br. at 13. Here, the State contends that Mr. Epefanio opened the door by his testimony of Mr. Pilon's character and credibility when he testified on direct about Mr. Pilon's purported sexual activities with Ms. Summers. Therefore, the State argues it was proper to call Mr. Epefanio as a rebuttal witness regarding Mr. Pilon's character and credibility.
¶ 29 However, none of the cases cited by the State to support its position are on point. State v. Fisher, 165 Wash.2d 727, 750, 202 P.3d 937 (2009); State v. Gefeller, 76 Wash.2d 449, 455, 458 P.2d 17 (1969); State v. Gallagher, 112 Wash.App. 601, 51 P.3d 100 (2002). And we find no Washington authority supporting this position. Again, the trial judge had already ruled that the inquiry was beyond the proper scope of cross-examination. That is a ruling vested in the sound discretion of the trial judge. White, 74 Wash.2d at 395, 444 P.2d 661.
¶ 30 Mr. Epefanio testified about sexual activity between Mr. Pilon and Ms. Summers. He could, accordingly, be cross-examined on that subject. But the State tried to question him on that subject as well as the confrontation at Ms. Summers' house. We conclude that Mr. Epefanio's waiver of his Fifth Amendment privilege against self-incrimination extended only to examination on matters raised in direct or redirect examination. Requiring Mr. Epefanio to testify about facts outside the scope of direct or redirect as a State's rebuttal witness compelled him to give evidence against himself. This violated his Fifth Amendment privilege against self-incrimination.

HARMLESS ERROR
¶ 31 Constitutional errors may be harmless. State v. We, 138 Wash.App. 716, 726, 158 P.3d 1238 (2007) (citing State v. Guloy, 104 Wash.2d 412, 425, 705 P.2d 1182 (1985)). "If the untainted evidence is so overwhelming that it necessarily leads to a finding of the defendant's guilt, the error is harmless." State v. Koslowski, 166 Wash.2d 409, 431, 209 P.3d 479 (2009).
¶ 32 Here, the untainted evidence of third degree rape of a child was overwhelming. Ms. Summers testified that she and Mr. Epefanio engaged in multiple incidents of sexual intercourse while she was 15 years old. Ms. Pugh witnessed two acts of intercourse between Ms. Summers and Mr. Epefanio during the charging period. Mr. Epefanio's compelled testimony about the Pilon incident was of little significance in view of the overwhelming evidence of guilt. The testimony elicited during rebuttal was largely irrelevant to the issue of guilt. Therefore, we conclude that any error in admitting the rebuttal testimony was harmless.
¶ 33 We further conclude that, while the trial court erred in allowing the State to call Mr. Epefanio as its rebuttal witness, any error was harmless.

EXCEPTIONAL SENTENCE
¶ 34 Mr. Epefanio contends the trial court erred in imposing an exceptional sentence. First, he contends the court failed to enter findings justifying the sentence, as required under RCW 9.94A.535. Second, Mr. Epefanio contends the trial court erred by modifying the language of the statutory aggravating factor set out in former RCW 9.94A.535(2)(g) (2003). The court substituted the words "under 16" for "under eighteen." RP at 899; CP at 135. Third, Mr. Epefanio contends that even if the factor is proper, the evidence is insufficient, as a matter of law, to support it because no appellate case has deemed five to six weeks a "prolonged period of time."
¶ 35 The question here is whether the relevant time periodfive to six weeks is sufficient to support the jury's conclusion that the abuse here was for a "prolonged period of time." That is a question of law and so our review is de novo. State v. Nordby, 106 Wash.2d 514, 517-18, 723 P.2d 1117 (1986). The reasons supporting the exceptional sentence must be substantial and compelling. State v. Russell, 69 Wash.App. 237, 250, 848 P.2d 743 (1993); RCW 9.94A.535.
¶ 36 Mr. Epefanio first contends the trial court erred in failing to enter written findings as required by RCW 9.94A.535. He is mistaken. Paragraph 2.4 of the judgment and sentence reflects that the trial court found substantial and compelling reasons *260 that justified the exceptional sentence, specifically noting the jury's finding of an aggravating factor. CP at 160. And the jury found by special verdict that the current offense was part of an ongoing pattern of sexual abuse of the same victim under the age of 16 years manifested by multiple incidents over a prolonged period of time. The court imposed the exceptional sentence based on this jury finding.
¶ 37 Next, Mr. Epefanio contends the trial court erred by changing the statutory language in former RCW 9.94A.535(2)(g) from "under the age of eighteen years" to "under the age of 16 years." He argues that the statutory list of aggravating factors is exclusive and therefore the court erred in imposing an exceptional sentence based on a factor not listed by the legislature. Former RCW 9.94A.535(2)(g) provides: "The offense was part of an ongoing pattern of sexual abuse of the same victim under the age of eighteen years manifested by multiple incidents over a prolonged period of time." We cannot see how the court's modification of the language to a pattern of abuse against a victim "under the age of 16 years" created "a new aggravating factor." The victim here was under the age of 18 years. The court simply had to limit the age to 16 years because sexual contact after the age of 16 was not a crime. RCW 9A.44.079(1). The court's instructions were then a correct statement of the law.
¶ 38 Finally, Mr. Epefanio contends that even if the aggravating factor is proper, insufficient evidence supports it because a five to six week period of sexual abuse does not constitute a "prolonged period of time" under former RCW 9.94A.535(2)(g).
¶ 39 In State v. Barnett, we concluded that "[t]wo weeks is not a prolonged period of time" in a case involving a defendant's rape and sexual abuse of a girlfriend. 104 Wash. App. 191, 203, 16 P.3d 74 (2001). We noted that "[c]ases from this state suggest that years are required." In State v. Harris, Division One of this court concluded that four events over six months constituted a prolonged period of time. 123 Wash.App. 906, 915, 99 P.3d 902 (2004), review granted, 154 Wash.2d 1032, 119 P.3d 852 (2005).
¶ 40 Since both of these cases were decided, the United States Supreme Court has moved responsibility for these determinations to the jury, as a matter of constitutional right. Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Here, there is no challenge to the propriety of the special verdict form or the other instructions. CP at 130 (Instruction 11); see CP at 132 (Instruction 13). And Mr. Epefanio could certainly argue that the time frame was not "prolonged," even assuming sexual contact during the relevant time frame. The jury's finding on these questions is entitled to great deference. State v. Bencivenga, 137 Wash.2d 703, 708-09, 974 P.2d 832 (1999). At some point, the courts could and may conclude, as a matter of law, that a given time frame is not "prolonged"; we will not do so here.
¶ 41 We then affirm the conviction and the sentence.
WE CONCUR: KULIK, C.J., and BROWN, J.