# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49760-3-II |
| Respondent, | |
| v. | |
| BRIAN K. BRUSH, | PUBLISHED OPINION |
| Appellant. | |

MAXA, C.J. – Brian Brush appeals the trial court's imposition of an exceptional sentence of 1,060 months for his first degree murder conviction. Brush murdered his former girlfriend, Lisa Bonney. The court imposed the exceptional sentence in part under RCW 9.94A.535(3)(h)(i), based on a finding that Brush had committed an aggravated domestic violence offense as part of an ongoing pattern of psychological abuse of Bonney manifested by multiple incidents over a prolonged period of time.

We hold that (1) the domestic violence/ongoing pattern of psychological abuse aggravator is not unconstitutionally overbroad; (2) under *State v. Baldwin*, 150 Wn.2d 448, 78 P.3d 1005 (2003), Brush cannot challenge the ongoing pattern of psychological abuse aggravator for being unconstitutionally vague; (3) the trial court did not err in finding that the ongoing pattern of psychological abuse occurred over a prolonged period of time based on Brush's abuse of Bonney over nearly seven weeks; and (4) the trial court's sentence was not clearly excessive because it does not shock the conscience in light of the nature of Brush's crime.

Accordingly, we affirm Brush's sentence.

FACTS

*Brush Excluding Bonney from His House*

For some time, Brush and Bonney had been in an on-and-off relationship. In April 2008, Bonney moved into Brush's house in Oregon along with her daughter, Elizabeth Bonney.[1] Following a fight, Brush excluded them from the house and prevented them from returning by changing the locks on the doors.

*Domestic Violence Incident*

Brush and Bonney continued to have contact and later lived together in Long Beach, Washington. On July 25, 2009, an altercation at their house resulted in Brush smashing a wine bottle against the counter, throwing electronics and personal possessions belonging to Bonney out of the house, and using a hammer to dent the hood and roof of Bonney's car.

When law enforcement responded, Brush alleged that Bonney had assaulted him by scratching him. The officers determined that Bonney was the primary aggressor, arrested her, and took her to jail. The following day, Brush withdrew his statement and stated that the assault had never occurred. Brush later admitted that his allegations against Bonney were untrue. After that night, Bonney and Elizabeth moved into a different house in Long Beach.

*Brush's Stalking of Bonney*

Over the next month, on several occasions Brush appeared to be following Bonney. Two incidents occurred when Bonney was with a friend, Dan Driscoll. On August 12, while Bonney was getting food with Driscoll, she saw a pickup truck drive by. Driscoll later testified that after Bonney saw the truck she became terrified. Bonney and Driscoll then went to the beach, where

---

[1] We refer to Elizabeth Bonney by her first name for clarity. We intend no disrespect.

Driscoll saw the truck again. Bonney told him that the truck belonged to Brush. She said that she wanted to leave because she did not feel safe.

On August 16, Bonney and Driscoll went to a local festival where Bonney again saw Brush's truck. She became scared, causing her and Driscoll to leave for Driscoll's parents' house. While Bonney and Driscoll were at the house, Bonney left to talk to Brush. After she returned, Brush came to the house and knocked on the door. Bonney told Driscoll to be quiet and not to answer, and she said that she did not want any contact with Brush.

Bonney left immediately afterwards and called Elizabeth. She told Elizabeth that Brush was stalking her and asked Elizabeth to meet her at their house. Elizabeth testified that Bonney sounded scared on the phone and that she was crying. Bonney and Elizabeth went to a friend's house while they tried to figure out what to do.

Later that night, Bonney and Elizabeth thought it would be safe to go to the beach, a few blocks away. Before leaving the apartment, Elizabeth looked to see if Brush's truck was nearby – she testified that several times before he had been watching them from around the corner. Elizabeth testified that as they walked along the edge of the road, she heard a truck and saw the lights of the truck behind them. As Elizabeth heard the truck accelerating, she turned around and saw that the truck was not stopping. She thought either that they would be hit by the truck or that there would be some other altercation.

Bonney and Elizabeth ran to a nearby parking lot and hid. As the truck drove past, Elizabeth saw that Brush was inside. Bonney and Elizabeth were both shaken up and crying. Bonney was so scared that she began throwing up.

When Bonney and Elizabeth returned to their house, there were voice messages on their phone in which Brush stated, "If you don't answer I'm sure that your work would love to see

3

naked pictures posted on the front door. Like I'm sure these people would love to see it if you're not going to talk to me." Report of Proceedings (RP) (Nov. 15, 2016) at 219. He also threatened to turn her in for improperly collecting unemployment and for committing tax fraud.

Brush made a second assault complaint against Bonney with the police. Again, the complaint was false.

Another of Bonney's friends, Steven Berglund, later testified about two more incidents in which Brush appeared to be following Bonney. On August 31, Berglund was helping Bonney move a bed to her new house when he saw Brush sitting in his truck two blocks away. Brush left when Berglund saw him, but returned to the same area a little while later.

On September 4, Berglund and a friend were talking with Bonney in a parking lot when Brush drove by very slowly and looked at them. Berglund testified that when he pointed Brush out to Bonney, she seemed frightened and fearful that Brush was there.

*Bonney's Death*

On September 11, Brush and Bonney had been discussing various financial issues by text message and they agreed to meet in person. Bonney suggested meeting at a park. When they met, Brush and Bonney began to argue. As the argument escalated, Brush got a shotgun from his nearby truck.

Brush used the shotgun to shoot Bonney four times at a short distance, killing her. The last shot, to Bonney's head, was at a distance of three or four feet. Three law enforcement officers were walking nearby and witnessed the shooting.

*Conviction and Appeal*

A jury found Brush guilty of first degree murder. The jury also found a number of aggravating factors under RCW 9.94A.535(3) for purposes of sentencing, including that the

4

crime was an aggravated domestic violence offense. The trial court's jury instruction defined "aggravated domestic violence offense" to include an offense that involved domestic violence and was part of an ongoing pattern of psychological abuse over a prolonged period of time.

Brush's standard range sentence was between 240 and 320 months, plus a 60 month firearm enhancement. However, the trial court imposed a 1,000 month exceptional sentence with the 60 month firearm enhancement.

Brush appealed his sentence, arguing that the jury instruction on the domestic violence/ ongoing pattern of psychological abuse aggravator, RCW 9.94A.535(3)(h), provided an improper definition of "prolonged period of time." *See State v. Brush*, 183 Wn.2d 550, 552-53, 556, 353 P.3d 213 (2015). The Supreme Court held that the instruction was improper and reversed Brush's exceptional sentence. *Id.* at 561. The court remanded to the trial court for consideration of evidence of a prolonged pattern of abuse. *Id.*

*Aggravating Factor Bench Trial*

On remand, Brush waived a jury trial on whether his crime was an aggravated domestic violence offense and the issue was tried to the bench. The trial court admitted testimony regarding Brush's stalking of Bonney and their interactions, as described above.

The trial court entered written findings of fact and conclusions of law, including the following conclusions:

> 3. This offense was an aggravated domestic violence offense that was part of an ongoing pattern of psychological or physical abuse manifested by multiple incidents over a prolonged period of time.
>
> 4. It is further evident that Brush's conduct and acts, including physical damage to Lisa's property and the harm caused, including the conduct which was not reported, which included repeatedly stalking Lisa, demonstrated a pattern of psychological abuse warranting a finding that this was an aggravated domestic violence offense.

Clerk's Papers (CP) at 244. The court concluded beyond a reasonable doubt that the crime was an aggravated domestic violence offense under RCW 9.94A.535(3)(h).

The trial court attached a similar statement to its judgment and sentence. The court found that Brush's offense involved domestic violence and the offense was part of an ongoing pattern of psychological abuse manifested by multiple incidents over a prolonged period of time and that Brush's conduct manifested deliberate cruelty. Based on its findings and the jury's prior finding, the court again imposed a 1,000 month exceptional sentence plus an additional 60 month firearm enhancement. The court did not state that it would have imposed the same sentence if only one of the aggravators had been present.

Brush appeals his exceptional sentence.

## ANALYSIS

A.  DOMESTIC VIOLENCE/PSYCHOLOGICAL ABUSE SENTENCING AGGRAVATOR

RCW 9.94A.535(3) provides a list of factors that can support a sentence above the standard range. If the trier of fact finds one of these factors, the trial court is allowed but not required to impose an exceptional sentence. RCW 9.94A.535; *see State v. Weller*, 197 Wn. App. 731, 735, 391 P.3d 527, *review denied*, 188 Wn.2d 1017 (2017).

The domestic violence/ongoing pattern of psychological abuse aggravator is stated in RCW 9.94A.535(3)(h) and allows for an exceptional sentence when:

> The current offense involved domestic violence, as defined in RCW 10.99.020, or stalking, as defined in RCW 9A.46.110, and one or more of the following was present:

> (i) The offense was part of an *ongoing pattern of psychological*, physical, or sexual *abuse* of a victim or multiple victims manifested by multiple incidents *over a prolonged period of time*.

(Emphasis added.) The legislature has not defined "psychological abuse" or "prolonged period of time" for purposes of this statute.

Brush argues that RCW 9.94A.535(3)(h)(i) is unconstitutionally overbroad and unconstitutionally vague, and that the trial court erred in finding that the psychological abuse occurred over a prolonged period of time. We reject these arguments.

B.     OVERBREADTH CHALLENGE TO PSYCHOLOGICAL ABUSE AGGRAVATOR

Brush argues that the domestic violence/ongoing pattern of psychological abuse aggravator set forth in RCW 9.94A.535(3)(h)(i) is facially overbroad under the First Amendment of the United States Constitution because it prohibits a substantial amount of protected speech. We disagree.

   1.     Legal Principles

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." *See State v. Homan*, 191 Wn. App. 759, 766-67, 364 P.3d 839 (2015). A statute that legitimately prohibits certain unlawful conduct and unprotected speech can violate the First Amendment when it also prohibits constitutionally protected speech.[2] *See State v. Immelt*, 173 Wn.2d 1, 6-7, 267 P.3d 305 (2011).

Under the First Amendment, a law is unconstitutionally overbroad if it prohibits a *substantial* amount of constitutionally protected speech. *Homan*, 191 Wn. App. at 766-67. This determination involves weighing the amount of conduct and unprotected speech that the statute legitimately prohibits against the amount of prohibited protected speech. *Id.* In striking this

---

[2] Brush also references article I, section 5 of the Washington Constitution in his assignment of error on this issue, but provides no argument regarding that provision and provides no analysis under *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986). Regardless, our analysis of overbreadth claims is the same under article I, section 5 and the First Amendment. *State v. Immelt*, 173 Wn.2d 1, 6, 267 P.3d 305 (2011).

balance, courts have " 'vigorously enforced the requirement that a statute's overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep.' " *Immelt*, 173 Wn.2d at 11 (quoting *United States v. Williams*, 553 U.S. 285, 292, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008)).

A statute is not unconstitutionally overbroad simply because it is possible to conceive of some impermissible applications. *Homan*, 191 Wn. App. at 767. There must be a realistic danger that the statute will significantly compromise protected First Amendment speech. *Id.* Therefore, we must identify whether the law legitimately prohibits certain speech and then weigh that legitimate prohibition against any illegitimate prohibition of protected speech. *Id.* at 767-68, 770.

We review whether a statute is unconstitutionally overbroad de novo. *Id.* at 766. Typically, the party challenging the statute bears the burden of proving its unconstitutionality. *Id.* at 765. But that burden shifts in the context of a First Amendment challenge. *Id.* The State bears the burden of showing that a statute that restricts speech is not unconstitutional. *Id.* at 765-66; *see Immelt*, 173 Wn.2d at 6.

When a defendant argues that a statute is facially overbroad on First Amendment grounds, as Brush does here, we do not address the specific facts of the case – i.e., whether the defendant's actual speech was protected. *Homan*, 191 Wn. App. at 765. The defendant may attack an overbroad statute even if his or her actual conduct or speech could lawfully be prohibited. *See Immelt*, 173 Wn.2d at 7. Instead, we identify whether the law improperly infringes on protected speech in general. *Homan*, 191 Wn. App. at 765.[3]

---

[3] The parties do not address whether a defendant can make a facial challenge to a sentencing aggravator statute. Therefore, we do not consider this issue and assume that a facial challenge is allowed here.

2.  Overbreadth Analysis

This court in *Homan* utilized a four-part analysis to assist in the balancing we must undertake to determine whether a statute is facially overbroad under the First Amendment. *Id.* at 767-71. We apply the same analysis to determine whether punishment of "an ongoing pattern of psychological . . . abuse" under RCW 9.94A.535(3)(h)(1) is overbroad.

a.  Allows Enhanced Punishment for Speech

First, we must determine whether RCW 9.94A.535(3)(h)(1) actually allows enhanced punishment[4] for speech. *Homan*, 191 Wn. App. at 767. A First Amendment violation can occur only if a statute places some burden on speech. *Immelt*, 173 Wn.2d at 7.

Because "psychological abuse" is undefined, we can refer to a dictionary. *State v. Reeves*, 184 Wn. App. 154, 159, 336 P.3d 105 (2014). The definition of "psychological" is "relating to, characteristic of, directed toward, influencing, arising in, or acting through the mind." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1833 (2002). The definition of "mind" includes a person's mental disposition, thoughts, and feelings. *Id*. at 1436. The relevant definitions of "abuse" are "to attack or injure with words" and "to use or treat so as to injure, hurt, or damage." *Id*. at 8. Based on these definitions, psychological abuse includes attacking or injuring a person's mental and emotional condition.

Under these definitions, speech and expressive conduct can constitute psychological abuse. Words alone can affect a person's mental and emotional condition. Therefore, RCW

---

[4] An overbreadth challenge typically involves a statute that *prohibits* speech. *See Homan*, 191 Wn. App. at 767. But because RCW 9.94A.535(3)(h)(i) is a sentencing aggravator rather than a statute that proscribes criminal conduct, we must analyze whether that statute allows enhanced *punishment* of speech.

9.94A.535(3)(h)(i) potentially allows enhanced punishment for a defendant's speech (with certain specified limitations discussed below).

      b.    Legitimately Allows Enhanced Punishment for Speech

Second, we must determine whether RCW 9.94A.535(3)(h)(i) *legitimately* allows enhanced punishment for conduct or unprotected speech. *Homan*, 191 Wn. App. at 767-68. Certain speech does not receive First Amendment protection. *Id.* A law that prohibits unprotected speech does not violate the First Amendment. *Homan*, 191 Wn. App. at 767-68. Here, the domestic violence/ongoing pattern of psychological abuse aggravator could legitimately allow enhanced punishment for conduct and certain types of unprotected speech.

Initially, it is clear that nonverbal *conduct* can constitute psychological abuse and that the statute's enhanced punishment for psychological abuse caused by such conduct does not implicate the First Amendment. Courts previously have used RCW 9.94A.535(3)(h)(i) to legitimately impose enhanced punishment for a wide range of conduct that does not receive any First Amendment protection. *E.g.*, *State v. Atkinson*, 113 Wn. App. 661, 671-72, 54 P.3d 702 (2002) (applying aggravator when defendant, among other things, tore off victim's clothing and locked her outside).

Regarding speech or expressive conduct, at least three types of unprotected speech could fall within the scope of RCW 9.94A.535(3)(h)(i): (1) "true threats" – statements that could reasonably be foreseen to be interpreted as a serious expression of intent to inflict bodily harm, *State v. Allen*, 176 Wn.2d 611, 626, 294 P.3d 679 (2013); (2) "libelous speech, fighting words, incitement to riot, obscenity, [or] child pornography," *State v. Kilburn*, 151 Wn.2d 36, 43, 84 P.3d 1215 (2004); and (3) "speech made with the intent to facilitate criminal conduct" or

" 'speech integral to criminal conduct.' " *Homan*, 191 Wn. App. at 768 (quoting *United States v. Stevens*, 559 U.S. 460, 468, 130 S. Ct. 1577, 176 L. Ed. 2d 435 (2010)).

A defendant could inflict psychological abuse through each one of these types of speech that the First Amendment does not protect. Therefore, RCW 9.94A.535(3)(h)(i) *legitimately* allows enhanced punishment for certain types of speech.

      c.    Applies to Constitutionally Protected Speech

Third, we must determine whether RCW 9.94A.535(3)(h)(i) applies to constitutionally protected speech. *Homan*, 191 Wn. App. at 769. Here, several types of protected speech conceivably could result in psychological abuse.

The First Amendment protects the expression of political beliefs, *see McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346, 115 S. Ct. 1511, 131 L. Ed. 2d 426 (1995), as well as the expression of opinions more generally. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-21, 110 S. Ct. 2695, 111 L. Ed. 2d 1 (1990). A person's repeated expression of political beliefs or opinions that another person finds offensive could constitute psychological abuse.

The First Amendment also generally protects verbal criticism of another person. *See City of Houston v. Hill*, 482 U.S. 451, 461, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987) (stating that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers" and concluding that speech that is provocative and challenging is still protected). Criticism of another person that is hurtful could constitute psychological abuse.

The First Amendment protects communications that are " 'merely jokes, idle talk, or hyperbole.' " *Homan*, 191 Wn. App. at 770 (quoting *State v. Schaler*, 169 Wn.2d 274, 283, 236 P.3d 858 (2010)). A defendant's jokes or mocking comments that humiliates or embarrasses another person could constitute psychological abuse.

11

Finally, the First Amendment protects comments that could be viewed as offensive that are not "true threats" or "fighting words." *See State v. Johnston*, 156 Wn.2d 355, 362-63, 127 P.3d 707 (2006). Under certain circumstances, the protection might apply even if the statements could be characterized as abusive. *See City of Seattle v. Huff*, 111 Wn.2d 923, 925-26, 767 P.2d 572 (1989) (holding that telephone calls threatening physical injury or property damage "with the intent to harass, intimidate, torment, or embarrass" was protected speech). Threats that do not rise to the level of true threats, or vulgar insults that are not fighting words, could constitute psychological abuse.

> d.     Applies to a Substantial Amount of Protected Speech

Fourth, we must determine whether RCW 9.94A.535(3)(h)(i) applies to a substantial amount of protected speech, either in an absolute sense or in relation to the legitimate applications of the statute. *Homan*, 191 Wn. App. at 767. We must weigh the amount of conduct and unprotected speech that the statute legitimately penalizes against the amount of protected speech that also would be penalized. *See id.*

As stated above, RCW 9.94A.535(3)(h)(i) legitimately allows enhanced punishment for a wide range of conduct, such as the stalking-type behavior here, as well as unprotected speech. The statute also could allow enhanced punishment for constitutionally protected speech.

However, it is significant that RCW 9.94A.535(3)(h)(i) does not broadly allow enhanced punishment for *all* speech that causes some level of psychological impact. The statute contains four significant conditions that limit its application to protected speech.

(1) RCW 9.94A.535(3)(h)(i) does not involve the verbal infliction of psychological abuse in the absence of some associated criminal conduct. The statute applies only after the defendant has committed an offense that involves domestic violence or stalking, which generally

involves conduct rather than speech. The psychological abuse must be "part of" that criminal conduct. RCW 9.94A.535(3)(h)(i).

(2) The statute does not apply to isolated incidents of verbal psychological abuse. The defendant must engage in an "ongoing pattern" of abuse "manifested by multiple incidents." RCW 9.94A.535(3)(h)(i).

(3) The statute does not apply to verbal psychological abuse that is short in duration. The pattern of psychological abuse must occur "over a prolonged period of time." RCW 9.94A.535(3)(h)(i). For example, two weeks is not legally sufficient to be a prolonged period of time. *See Brush*, 183 Wn.2d at 558.

(4) The statute does not apply to verbal statements that cause only minimal psychological impact on the victim. The defendant's behavior must rise to the level of "abuse." RCW 9.94A.535(3)(h)(i). Abuse suggests some level of actual psychological harm. *See* WEBSTER'S at 8 (defining abuse to include "[T]o attack or injure with words"); BLACK'S LAW DICTIONARY 12 (10th ed. 2014) (defining abuse to include treatment often resulting in emotional injury).

Even with these limitations, RCW 9.94A.535(3)(h)(i) could penalize protected speech that is part of criminal conduct, involves an ongoing pattern manifested by multiple incidents, occurs over a prolonged period of time, and rises to the level of abuse. But the scope of the statute is so limited that we cannot say that this aggravator penalizes a *substantial* amount of protected speech.

RCW 9.94A.535(3)(h)(i) legitimately penalizes a wide range of conduct and unprotected speech. Any impact on protected speech would not be substantial. Accordingly, we hold that

the domestic violence/ongoing pattern of psychological abuse aggravating factor in RCW

9.94A.535(3)(h)(i) is not unconstitutionally overbroad.[5]

C.  VAGUENESS CHALLENGE TO PSYCHOLOGICAL ABUSE AGGRAVATOR

Brush argues that the domestic violence/ongoing pattern of psychological abuse

aggravator set forth in RCW 9.94A.535(3)(h)(i) is unconstitutionally vague because it provides

no meaningful definition of "psychological abuse."  We apply *State v. Baldwin*, 150 Wn.2d 448,

461, 78 P.3d 1005 (2003), and hold that this sentencing aggravator is not subject to a vagueness

challenge.

1.  Legal Background

The due process clauses of the Fifth and Fourteenth Amendments prohibit penal statutes

that are excessively vague.  *Beckles v. United States*, ___ U.S. ___, 137 S. Ct. 886, 892, 197 L.

Ed. 2d 145 (2017); *State v. Murray*, 190 Wn.2d 727, 736, 416 P.3d 1225 (2018).  A vagueness

challenge implicates two due process concerns:

> First, criminal statutes must be specific enough that citizens have fair notice of what
> conduct is proscribed.  Second, laws must provide ascertainable standards of guilt
> to protect against arbitrary arrest and prosecution.  Both prongs of the vagueness
> doctrine focus on laws that prohibit or require conduct.

*Baldwin*, 150 Wn.2d at 458 (citations omitted).  In applying this rule, we ask whether a person of

reasonable understanding must guess at the statute's meaning.  *Murray*, 190 Wn.2d at 736.

The prohibition against vagueness applies both to statutes defining elements of crimes

and to "statutes fixing sentences."  *Johnson v. United States*, ___ U.S. ___, 135 S. Ct. 2551,

2557, 192 L. Ed. 2d 569 (2015).  As stated above, statutes that define criminal offenses must be

---

[5] Brush argues that we could impose a limiting construction on the psychological abuse
aggravator to render it constitutional.  Because we hold that the statute is not overbroad, we do
not address this issue.

adequately definite to allow ordinary people to understand what conduct is prohibited and to discourage arbitrary enforcement. *Beckles*, 137 S. Ct. at 892. Statutes that fix sentences must "specify the range of available sentences" with sufficient clarity. *Id.*

    2.   *Baldwin* Rule

In *Baldwin*, our Supreme Court considered a vagueness challenge to two provisions of the Sentencing Reform Act (SRA). 150 Wn.2d at 457. The first was former RCW 9.94A.120(2) (2000), which provided for a standard range sentence unless the sentencing court found substantial and compelling reasons to justify an exceptional sentence.[6] *Baldwin*, 150 Wn.2d at 458-59. The second was former RCW 9.94A.390(2)(d) (2000), which stated that one aggravating circumstance that could justify an exceptional sentence was whether the offense was a major economic offense.[7] *Baldwin*, 150 Wn.2d at 459.

The court noted that sentencing guideline statutes "do not define conduct nor do they allow for arbitrary arrest and criminal prosecution." *Id.* Specifically, the court stated that "[s]entencing guidelines do not inform the public of the penalties attached to criminal conduct nor do they vary the statutory maximum and minimum penalties assigned to illegal conduct by the legislature." *Id.* Therefore, the court concluded that "the due process considerations that underlie the void-for-vagueness doctrine have no application in the context of sentencing guidelines." *Id.*

---

[6] The relevant language of former RCW 9.94A.120(2) is now provided in RCW 9.94A.535.

[7] Former RCW 9.94A.390(2)(d) subsequently was recodified as RCW 9.94A.535(3)(d). *See* LAWS OF 2001, ch. 10, § 6.

Regarding the specific sentencing statutes at issue, the court stated that both statutes allowed the trial court to exercise discretion in fashioning a sentence. *Id.* at 460. The court concluded:

> The guidelines are intended only to structure discretionary decisions affecting sentences; they do not specify that a particular sentence must be imposed. Since nothing in these guideline statutes requires a certain outcome, the statutes create no constitutionally protectable liberty interest.

*Id.* at 461. Under *Baldwin*, a defendant is precluded from challenging the sentencing aggravators in RCW 9.94A.535(3) on vagueness grounds. *State v. Chanthabouly*, 164 Wn. App. 104, 141-42, 262 P.3d 144 (2011).

    3.    Applying *Baldwin* After *Blakely*

Brush argues that *Baldwin* no is no longer valid after the United States Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), and changes to the SRA based on *Blakely*. The State argues that *Baldwin* remains good law.[8]

At the time of *Baldwin* and before *Blakely*, the SRA provided judges with the authority to impose a sentence outside the standard range based on the judge's own finding that there were "substantial and compelling reasons justifying an exceptional sentence." Former RCW 9.94A.120(2) (2000); *see State v. Gore*, 143 Wn.2d 288, 315, 21 P.3d 262 (2001), *overruled by State v. Hughes*, 154 Wn.2d 118, 131, 110 P.3d 192 (2005). The judge was required only to provide written findings and conclusions, former RCW 9.94A.120(3), and to base the exceptional sentence on factors not used in computing a standard range sentence. *Gore*, 143 Wn.2d at 315. Therefore, the SRA allowed the judge "to impose an exceptional sentence . . .

---

[8] In *Murray*, the Supreme Court recently declined to address this issue, and assumed without deciding that a defendant can challenge the aggravators listed in RCW 9.94A.535 on vagueness grounds because the aggravator at issue was not vague. 190 Wn.2d at 732 n.1.

without the factual determinations being charged, submitted to a jury, or proved beyond a reasonable doubt." *Id.* at 314.

The Court in *Blakely* held that this scheme was unconstitutional under the Sixth Amendment. 542 U.S. at 303-05. The Court held that a trial court's sentencing authority must be limited to the maximum sentence the court could impose without making any additional findings. *Id.* at 303-04. Under the SRA, such a sentence would be the maximum within the standard range rather than the statutory maximum for the particular crime. *See id.* To be consistent with the Sixth Amendment, *Blakely* requires any fact that increases the penalty beyond the standard range to be found by a jury beyond a reasonable doubt. *Id.* at 301.

To comply with *Blakely*, the legislature amended certain SRA provisions. LAWS OF 2005, ch. 68. Former RCW 9.94A.120(2), recodified as RCW 9.94A.535, still allows a trial court to impose an exceptional sentence based on a finding of substantial and compelling reasons. But facts supporting aggravated sentences must now be determined under RCW 9.94A.537. RCW 9.94A.537(3) states that the facts supporting the aggravating circumstances in RCW 9.94A.535(3) must be proved to a jury, or to the court if a jury is waived, beyond a reasonable doubt, or by the defendant's stipulation.

Brush claims that under *Blakely* and RCW 9.9A.537(3), the sentencing guidelines – including aggravators like RCW 9.94A.535(3)(h)(i) – *do* "inform the public of the penalties attached to criminal conduct" and *do* "vary the statutory maximum . . . penalties assigned to illegal conduct by the legislature." *Baldwin*, 150 Wn.2d at 459). Brush emphasizes that the SRA now limits the discretion that trial courts had at the time *Baldwin* was decided, and now requires a trial court to impose a standard range sentence unless the State proves beyond a reasonable

doubt one of the aggravating factors listed in RCW 9.94A.535(3). As a result, he claims that sentencing guidelines now do set penalties.

Brush's analysis is unpersuasive. He assumes that RCW 9.94A.535(3) should be treated as a statute that fixes the sentence for a crime. He cites *Johnson*, 135 S. Ct. at 2557, for the proposition that the vagueness doctrine applies to the list of aggravating factors in RCW 9.94A.535(3). *Johnson* addressed a statute that, when applicable, required sentencing courts to increase a defendant's sentence from a 10-year maximum to a 15-year minimum with a maximum of life. 135 S. Ct. at 2555. *Johnson* stated the rule that "statutes fixing sentences" are subject to a vagueness challenge. *Id.* at 2556-57.

However, the aggravating factors in RCW 9.94A.535(3) do not fix sentences or the ranges of sentences for any crime and do not vary any statutory minimum or maximum sentence. Under the SRA, the defendant's maximum sentence is based on the separate provisions that define the type of offense. The provisions relevant here are RCW 9A.32.030(2), which establishes the crime of first degree murder and states that it is a class A felony; and RCW 9A.20.021(1)(a), which provides that the maximum sentence for a class A felony is life imprisonment. *Those* statutes are subject to a vagueness challenge because they establish the maximum sentence for first degree murder. *See United States v. Batchelder*, 442 U.S. 114, 123, 99 S. Ct. 2198, 60 L. Ed. 2d 755 (1979) ("[V]ague sentencing provisions may post constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute."). But RCW 9.94A.535(3) simply identifies the factors that may allow a trial court to impose an exceptional sentence above the standard range, not to exceed the statutory maximum, without identifying a particular sentence or sentence range. Therefore, *Johnson* is inapplicable here.

Brush also argues that because the post-*Blakely* amendments to RCW 9.94A.535 and the enactment of RCW 9.94A.537 now place substantive limits on the trial court's ability to impose an exceptional sentence, he has a protected liberty interest in a standard range sentence subject to the vagueness doctrine. Brush is correct that after *Blakely*, any fact supporting an aggravated sentence under RCW 9.94A.535(3) must be proven to a jury beyond a reasonable doubt. *See Blakely*, 542 U.S. at 301-03. But *Blakely* and the SRA amendments did not impact the trial court's sentencing authority once an aggravating factor is properly found. As the court noted in *Baldwin*, these statutes "do not specify that a particular sentence must be imposed" or "require[] a certain outcome." 150 Wn.2d at 461. RCW 9.94A.535 still provides the trial court with discretionary authority to impose or not to impose an exceptional sentence even when the jury finds an aggravating factor.

Here, RCW 9.94A.535(3)(h)(i) did not limit the trial court's sentencing discretion or require the trial court to impose a standard range sentence when the jury found that the psychological abuse aggravator applied. The statute does not address what sentence the trial court must impose. Instead, RCW 9.94A.535(3)(h)(i) simply provides that when the jury determines beyond a reasonable doubt that the psychological abuse aggravating factor applied, the trial court can impose an exceptional sentence within the statutory maximum.

Because RCW 9.94A.535(3)(h)(i) did not fix the sentence for Brush's conviction and did not specify that a particular sentence had to be imposed, the analysis in *Baldwin* of the vagueness challenge to the former version of RCW 9.94A.535(3)(d) applies equally to Brush's vagueness challenge to RCW 9.94A.535(3)(h)(i). The requirement under *Blakely* and current sentencing statutes that the applicability of any aggravator must be determined by a jury does not change the analysis.

19

This conclusion is consistent with the United States Supreme Court's decision in *Beckles*, 137 S. Ct. 886, which although not directly on point provides a useful comparison. The Court addressed a vagueness challenge to advisory federal sentencing guidelines that were not binding on trial courts but provided a framework for the exercise of the court's discretion. *Id.* at 890, 894. The Court concluded that the guidelines were not subject to a vagueness challenge. *Id.* at 895. The Court distinguished *Johnson* because unlike the sentence-fixing statute at issue there, the guidelines did not fix the permissible range of sentences that a trial court must impose. *Id.* at 892. Instead, they "merely guide[d] the exercise of a court's discretion in choosing an appropriate sentence within the statutory range." *Id.*

Similarly, under the SRA a trial court has discretion in deciding whether to impose an exceptional sentence and in determining the length of the sentence when a trier of fact properly finds that an aggravator applies. The trial court's sentencing discretion is limited only by the statutory maximum.

Division Three of this court recently addressed this issue in *State v. DeVore*, 2 Wn. App. 2d 651, 413 P.3d 58 (2018). The defendant challenged a statutory aggravating factor on vagueness grounds and argued that *Baldwin* was invalid after *Blakely*. *DeVore*, 2 Wn. App. 2d at 660-61. The court concluded that *Blakely* was not relevant. Instead, the court analogized its case to *Beckles*. *DeVore*, 2 Wn. App. 2d at 664-65. As in *Beckles*, the court in *DeVore* held that RCW 9.94A.535(3)'s aggravating factors are not subject to a vagueness challenge because they do not specify the sentence that must be imposed nor limit the trial court's discretion during sentencing. *Id.* at 664-65.

We hold that *Baldwin* remains good law. Accordingly, we apply *Baldwin* and hold that Brush cannot assert a vagueness challenge to RCW 9.94A.535(3)(h)(i).[9]

D.    APPLICATION OF RCW 9.94A.535(3)(h)(i)

Brush argues that even if RCW 9.94A.535(3)(h)(i) is constitutional, the trial court erred in applying the domestic violence/ongoing pattern of psychological abuse aggravator. He claims that the 2009 incidents involving Bonney did not occur over a prolonged period of time as required by the statutory language.[10]  We disagree.

Brush's psychological abuse occurred over nearly seven weeks between July 25 and September 11 of 2009. Brush argues that, as matter of law, seven weeks cannot qualify as a "prolonged period of time."

In general, whether a particular pattern of abuse occurred over a prolonged period of time is a question for the trier of fact. *Brush*, 183 Wn.2d at 558. However, whether a particular time period is insufficient as a matter of law to qualify as a prolonged period of time is a question of law that we review de novo. *State v. Epefanio*, 156 Wn. App. 378, 391, 234 P.3d 253 (2010).

The court in *State v. Barnett* held that two weeks is not a prolonged period of time. 104 Wn. App. 191, 203, 16 P.3d 74 (2001). However, in *Brush* the Supreme Court held that it was

---

[9] Even if Brush could make a vagueness challenge to RCW 9.94A.535(3)(h)(i), that provision is not vague. The term "psychological abuse" is sufficiently definite both to allow ordinary people to understand what is proscribed and to prevent arbitrary enforcement. *See State v. Bahl*, 164 Wn.2d 739, 752-54, 193 P.3d 678 (2008) (reviewing vagueness standard).

[10] Brush also argues that the June 2008 incident in which he changed the locks on his Oregon house and locked out Bonney and Elizabeth did not constitute psychological abuse and could not be used to show abuse over a prolonged period of time. As discussed below, we hold that Brush's psychological abuse occurred over a prolonged period of time even without considering the 2008 incident. And there is no indication that the trial court's conclusion that the abuse occurred over a prolonged period of time was dependent on the June 2008 incident being characterized as psychological abuse.

error to instruct the jury that "prolonged period of time" meant more than two weeks. 183 Wn.2d at 557-58.

In *Epefanio*, the court held that abuse occurring over a period between five or six weeks was sufficient to satisfy the prolonged period of time requirement. 156 Wn. App. at 391-92. The court concluded, "At some point, the courts could and may conclude, as a matter of law, that a given time frame is not 'prolonged'; we will not do so here." *Id.* at 392.

Brush does not present any argument for why *Epefanio* does not apply here, and there is no reason for us to reach a different result. Applying the aggravator in this case is consistent with the rationale in *Epefanio*: that the effect of any one act of abuse "is more devastating when the victim has been routinely subjected to similar acts." *State v. Duvall*, 86 Wn. App. 871, 877, 940 P.2d 671 (1997). The record demonstrates that effect. Testimony showed that Brush consistently and repeatedly followed and threatened Bonney, with multiple people stating that she became fearful, scared, and terrified. And the courts that have rejected applying the aggravator have done so based on much shorter periods. *See Barnett*, 104 Wn. App. at 203 (two weeks); *State v. Quigg*, 72 Wn. App. 828, 841, 866 P.2d 655 (1994) (three days).

Accordingly, we hold that the trial court did not err in ruling that Brush's ongoing pattern of psychological abuse occurred over a prolonged period of time.

E.    CLEARLY EXCESSIVE SENTENCE

Brush argues that his 1,000 month sentence is clearly excessive. We disagree.

The trial court has discretion to determine the appropriate length of an exceptional sentence when substantial and compelling reasons are present. *State v. Knutz*, 161 Wn. App. 395, 410, 253 P.3d 437 (2011). Therefore, when a defendant argues that an exceptional sentence is clearly excessive, we review the sentence under an abuse of discretion standard. *Id.* We have

22

"considerable latitude" in assessing whether a sentence is clearly excessive. *State v. Halsey*, 140 Wn. App. 313, 325, 165 P.3d 409 (2007).

A sentence is clearly excessive if (1) it is "clearly unreasonable," i.e. was based on untenable grounds or untenable reasons; or (2) it was based on proper reasons, but its length, in light of the record, shocks the conscience. *Knutz*, 161 Wn. App. at 410-11; *Halsey*, 140 Wn. App. at 324. A sentence "shocks the conscience" if no reasonable person would have adopted it. *Knutz*, 161 Wn. App. at 411.

In murder cases factually similar to this one, courts have rejected challenges to exceptional sentences substantially greater than the standard range. *See State v. Ritchie*, 126 Wn.2d 388, 399, 894 P.2d 1308 (1995) (upholding 900 month exceptional sentence despite 320 month standard maximum); *State v. Burkins*, 94 Wn. App. 677, 697, 702, 973 P.2d 15 (1999) (upholding 720 month sentence despite 333 month standard maximum); *State v. Drummer*, 54 Wn. App. 751, 759-60, 775 P.2d 981 (1989) (upholding 660 month sentence despite 450 month standard maximum); *State v. Harmon*, 50 Wn. App. 755, 757, 762, 750 P.2d 664 (1988) (upholding 648 month sentence despite 333 month standard maximum).

Here, the trial court imposed a 1,000 month sentence plus the 60 month firearm enhancement. This sentence was 680 months and more than 2.5 times greater than the top of Brush's standard range sentence, 380 months. The trial court based its sentence on two aggravating factors: deliberate cruelty and a pattern of abuse. Although the sentence is substantial both in absolute terms and relative to Brush's standard range sentence, it is not so lengthy that it shocks the conscience. Brush inflicted psychological abuse on Bonney, and the court found that he acted with deliberate cruelty by repeatedly shooting her at close range with a

shotgun. In light of these aggravating factors, the trial court did not abuse its discretion in imposing Brush's sentence.

Accordingly, we hold that Brush's sentence is not clearly excessive.

F.      APPELLATE COSTS

Brush requests that we refrain from awarding appellate costs. He points out that the trial court found him to be indigent in an order allowing him to seek review at public expense. However, the State suggests that Brush recently received a substantial tax reimbursement and had funds available at the time of his incarceration.

A commissioner of this court will determine whether costs should be awarded under RAP 14.2 if the State submits a cost bill and if Brush objects to that cost bill.

CONCLUSION

We affirm Brush's sentence.

MAXA, C.J.

We concur:

LEE, J.

MELNICK, J.